**CLEVELAND (city) v WALKER (2 cases)**

Ohio Appeals, 8th Dist, Cuyahoga Co

Nos 15279 & 15280.  Decided April 27, 1936

Alfred Clum, Director of Law, Cleveland, Arthur E. Griffith, Assistant Director of Law, Cleveland, and Theodore E. Schwartz, Assistant Director of Law, Cleveland, for plaintiff in error.

Phillips & Falsgraf, Cleveland, for defendant in error.

## OPINION

By LIEGHLEY, PJ.

It is obvious that the petition is drawn upon a theory of common law negligence and that the city is liable upon the facts pleaded.

Rockefeller pond is located in Rockefeller Park which is one of a chain of connected parks included within the public park system of the City of Cleveland. In the summer this pond is open to the general public for boating and water attractions and in the winter for skating and other appropriate winter sports. The park is improved in its vicinity with a boulevard running near by. A shelter and comfort station is located on its bank. Tennis courts are provided for the public and located across the boulevard opposite the shelter station. A natural brook flows through this improved portion and partly surrounding it are wooded banks rising rather abruptly to an upper level.

It is claimed that a week or more prior to the date of this occurrence there had been skating on this pond but that the weather had moderated in the meantime causing the ice to soften and water to accumulate at one end. That the city provided a guard who slept in this comfort station and whose duty it was to warn the public when the ice on the pond was in a dangerous condition. It is admitted in argument that a danger signal, a red flag, had been flying continuously for some days. Children were playing all day on this pond and different groups had been warned to stay off and were chased off by the guard, but it is claimed the decedents were not warned nor guarded against this known unsafe and dangerous condition of the ice and that the City of Cleveland was negligent in permitting children to play upon this ice in this dangerous condition.

Counsel have cited a large number of authorities. Among them are the following decisions of the Supreme Court of Ohio.

Bello v Cleveland, 106 Oh St 94.

Akron v Butler, 108 Oh St 122.

City of Cleveland v Ferrando, a minor, 114 Oh St 207.

Arbenz v City of Wooster, 116 Oh St 281.

City of Toledo v Cummings, Admr., 121 Oh St 37.

City of Cleveland v Pine, 123 Oh St 578.

City of Mingo Junction v Sheline, Admr., 130 Oh St 34.

Sec 3714 GC is in the following language

and material to a decision of the issues discussed by counsel in this case:

"Municipal corporations shall have special power to regulate the use of the streets, to be exercised in the manner provided by law. The council shall have the care, supervision and control of public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts, within the corporation, and shall cause them to be kept open, in repair, and free from nuisance."

After examining and harmonizing the Ohio decisions the following conclusions seem to be supported by Ohio authorities.

A municipality that owns and maintains a public park system for the promotion of the health and welfare of the general public is performing a governmental function. Its rights, powers and duties in the exercise of such governmental function are not qualified or limited except as and to the extent that the provisions of §3714 GC do so.

The municipality owning and maintaining a public park for the use and benefit of the general public is not liable for common law negligence to a member of the general public sustaining injury while using the park for pleasurable or recreational purposes.

Sec 3714 GC imposes the duty upon the municipality to keep its public grounds "open, in repair, and free from nuisance," and unless injury to a member of the general public so using the park can be attributed to a violation of this duty, the municipality is not liable therefor.

Regulation and supervision of activities in a park owned and maintained for the good of the general public to the end that each member thereof, who seeks to do so, shall have equal and unmolested opportunity to share and enjoy whatever the park in its near natural condition provides should not be confused with commercial operation of activities in a park.

The maintenance and operation of a public park steps down from a governmental to a proprietary function only when its operation is commercial comparable to the operation of a municipally owned utility in a greater or lesser degree.

Finally, whether the hazard was artificially created or was a hazard incident to the natural state of the territory in the park, it must be such as is comprehended within the statute as a nuisance to render the municipality liable for creating, permitting or maintaining it.

It is urged that these decedents were invitees and entitled to the protection of the law as such. In other words that the city owed to them the duty of exercising ordinary care. With this contention we do not agree. They were not invitees in the same sense that a customer is an invitee in a store. True it is that as members of the general public they were invited to use the facilities and enjoy the privileges that the park afforded. These were public grounds owned by the public to which every member of the public had access and the right to enjoy and it is only in this sense that these decedents were invitees in that they exercised the privilege. It was the lure of the open spaces, the near virgin condition of the park, nature in its countless variations and manifestations that constituted the invitation. Some stress was laid upon the claim that this pond was not guarded, or if a guard was provided he did not perform his duty for the safety of these children. In our view the city was under no obligation to provide a guard under the circumstances. The hazards that were there present were such as the elements and nature presented and created.

Gordon Park and Edgwater Park are both included within the public park system of the City of Cleveland and bounded on the north by the shores of Lake Erie. During the summer season the public of the city resort to these beaches for bathing and water sports. The city has been accustomed to provide attendants or guards during the open season, who supervise and regulate the crowds in the use of these beaches. When a swimmer is endangered these guards render such aid for rescue as is within their power. No one thus far, to our knowledge, has had the temerity to claim that the city is liable for a drowning in Lake Erie off the beach. If the city is ever liable, it is because the city permitted some condition to exist which is proven to be a nuisance within the statute. In the winter season, the same lake, beach, water, ice and other attractions are at the same locations unguarded. Adults and children, if attracted, visit and play thereabout at their own risk.

· The public park system of the City of Cleveland is very extensive and comprises probably hundreds of acres. These parks contain many pools and wooded hills with precipitous banks and bisected here and there with running streams. Throughout these parks may be found numerous dangerous hazards to the unwary. If it were the duty of the city to maintain these natural parks in a state of safety in the same sense and to the same degree that it is required to use ordinary care in the exercise of its proprietary function, then a destruction of much of the natural beauty of the parks would be required. To retain and maintain this park system as nearly in its natural state as possible has been the constant and consistent objective. To remove all the many hazards created by nature on the hills and slopes and from the water holes and running streams would destroy the beauties and eliminate its attractions. A member of the public assumes the risks when roaming over a park in its near original or natural state.

Judgment reversed as contrary to law, exceptions. Final judgment for plaintiff in error, exceptions.

TERRELL, J, concurs in judgment.
LEVINE, J, dissents.