Walter Wood, Administrator of Estate of Walter Wood, Jr., Appellee, v. Consumers Company, Appellant.

Gen. No. 10,201.

Opinion filed June 4, 1948.

Released for publication June 25, 1948.

WILLIAM D. KNIGHT, of Rockford, for appellant.

B. JAY KNIGHT, FREDERICK H. HAYE and THOMAS A. KEEGAN, all of Rockford, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

On February 17, 1946, Walter Wood, Jr., seven years old, was drowned in a pond located on a tract of land belonging to the defendant. Subsequently this action was brought by his father, as administrator of his son's estate, to recover for his alleged wrongful death. A jury trial resulted in a verdict and judgment in favor of the plaintiff for $5,000 and defendant appeals.

The suit is brought upon the theory that the defendant maintained upon its premises an attractive nuisance and in this connection the complaint alleged that for many years the defendant owned a sizeable tract of land lying south and east of the city limits of South

Beloit, Illinois and also owned necessary equipment which it used thereon for excavating from its premises quantities of sand and gravel; that as a result thereof piles of sand and gravel and large holes were left upon the premises; that many of the excavations so made were of a depth of thirty feet and water from springs and surface drainage accumulated therein to the depth of six to fifteen feet; that during the winter months ice and snow covered the surface of the banks and sides of these excavated portions of defendant's premises making them suitable for sliding; that on February 17, 1946, plaintiff's intestate, with his thirteen-year-old sister, went upon the premises of the defendant to slide; that plaintiff's intestate had no ice skates; that as a "consequence of the attractive and tempting northerly lake or pool of water thereon, which was unfenced and unguarded, and because of the tempting character of the sloping banks covered with ice and snow, plaintiff's intestate did, with his minor sister, proceed to slide upon said sloping banks of said pool of water and down upon the ice and while so upon said ice did fall through the ice and into said pool of water and he, together with his minor sister, were drowned.''

The evidence discloses that the tract of land of the defendant consists of approximately 200 acres, located south and east of the city limits of South Beloit, Illinois, a city with a population of thirty-five hundred people. The southerly boundary of South Beloit is Gardiner street or avenue. From this street to the north line of the property of the defendant it is about four hundred feet. The defendant has owned this property for at least twenty-four years and it mines, washes and grades sand and gravel therefrom. The property is improved with several buildings and equipment usual and common to the character of this business. Sand and gravel have been excavated through the years and two sizeable pools or ponds re-

sulted from these operations. A railroad switch track intersects Gardiner avenue and runs south into the premises and along the west side of the pool where plaintiff's intestate was drowned and there are also other switch tracks on the property. The automobile entrance to the property is known as the Washington street entrance. This road is a private one and is so marked but it is used by the public generally. It leads into the area of the washing plant not far from the northern end of the north pond. This pond is 605 feet long and approximately one hundred feet wide at the widest place near the north end. At the south end it is about forty feet wide. From the Washington street entrance to the north end of the pond the distance is 607 feet and from the north end of the pond to the center line of Gardiner avenue it is 1348 feet. Upon the west side of defendant's property is a bluff some thirty feet high. The pond is several hundred feet east of this bluff. The nearest streets to the west side of this property are Park avenue and Lathrop Terrace. Lathrop Terrace is a dead end street and intersects Park avenue and in order to reach defendant's property from this intersection or from any point on either of these streets it is necessary to go 150 feet across property not owned by the defendant. From this intersection to the north end of the pond it is 625 feet and to the south end of the pond it is 992 feet.

Walter Wood, Jr. lived with his parents on Gardiner avenue. Their home faced the north and farming land is to the south. About one o'clock Sunday afternoon, February 17, 1946, Walter and his thirteen year old sister were seen playing in the snow in a lot immediately west of their home. So far as the evidence in this record discloses they were not seen by any one thereafter. Between nine-thirty and ten o'clock that evening, their bodies were recovered from a hole in the ice in this north pond at a point forty or fifty feet

from the north end and about six or eight feet from the east bank. There were skate marks and tracks nearby and toward the south end of the pond there were marks indicating that someone had been sliding down the slope or bank leading to this portion of the pond. The pond itself was partially frozen over and its banks and the ice on the pond were lightly covered with snow. At the Washington street entrance and at several other places there were signs posted which read "Private Property, Keep Out." If plaintiff's intestate and his sister left their home and went west along Gardiner avenue and then turned south on Park avenue and then entered the private road to the Washington street entrance, the sign could have been seen. If they went west from their home to the switch track and then south along the right of way and then entered defendant's property or had they gone directly across the fields south of their home to the property of the defendant or had they entered from the east side similar signs were posted and may have been encountered. In going across the field south of their home they would have had to cross a barbed wire fence, railroad tracks, gravel and sand piles and gone down a rather steep bank in order to reach the north pond. The slope of the bank at the south end of the pond is not so steep. The banks were of such height that the pond could not be seen until one was rather close to it. It could not be seen from the Wood home or from Gardiner avenue or from any public street. The evidence discloses that children had been near the pond to swim several years before and one witness testified that ten years before the trial of this case he and five other children were skating on this pond and there is some evidence that children did play in the piles of sand and gravel. Russell O. Webster, plant superintendent of the defendant for the past twenty years, testified that he had never had occasion to warn children from the pool and had never seen any children in or near the

pond. Theron Carter, the plant foreman of the defendant for the past five years, testified that he never saw any children swimming in the pool, although he had seen them playing in the sand on defendant's property. Three employees of the defendant were working in and around the tool house near the north end of the pond the Sunday afternoon in question but no one of them saw any children on the premises that afternoon.

It was and is the theory of the plaintiff that this artificial pond was an attractive nuisance and that children played near it with the knowledge of the defendant; that therefore defendant must be held to have extended to plaintiff's intestate, upon the day in question, an invitation to enter, and having entered at the invitation of defendant, it was the duty of the defendant to exercise reasonable care for his safety and that reasonable care, under the circumstances, required it to guard, fence and police its premises and thereby protect the life of plaintiff's intestate. Counsel insist that whether this pond is or is not an attractive nuisance and whether that doctrine is applicable to this case and whether the defendant is guilty of negligence and whether the deceased and his parents were in the exercise of due care, were all questions of fact and the jury having resolved these questions in favor of the plaintiff, the judgment based upon those findings should be affirmed. In support of their contentions, counsel chiefly relies upon *City of Pekin v. McMahon,* 154 Ill. 141 and cites, among other cases, *Linnberg v. City of Rock Island,* 157 Ill. App. 527; *Cochran v. Kankakee Stone & Lime Co.,* 179 Ill. App. 437; *Thomas v. Anthony,* 261 Ill. 288; *Howard v. City of Rockford,* 270 Ill. App. 155 and *Wolczek v. Public Service Co. of Northern Illinois,* 342 Ill. 482.

Counsel for defendant insists that the attractive nuisance doctrine does not apply to the facts as disclosed by the record in this case and therefore the

trial court erred in denying its motions for an instructed verdict; that if the doctrine does apply the weight of the evidence is that defendant did not know that children were playing upon these premises and it never consented thereto and that there is no evidence in the record upon which an implied invitation to come upon the premises of the defendant could be based. Counsel further insists that the evidence discloses that plaintiff's intestate and his parents and next of kin were all guilty of contributory negligence and that the court erred in the admission of evidence, the giving of an instruction and that the verdict is excessive.

*City of Pekin v. McMahon,* 154 Ill. 141, is a leading case upon this subject. It was an action brought against the City of Pekin for negligently causing the death of Frank McMahon, a boy less than 9 years of age. The plaintiff recovered a judgment for $1,600 and in affirming this judgment the Supreme Court states that the general rule is well settled that the private owner of land is under no obligation to strangers to place guards around excavations upon his land and that the law does not require him to keep his premises in safe condition for the benefit of trespassers or those who merely come to seek their own pleasure or to gratify their own curiosity. It is then said that an exception to this general rule exists in favor of children and that an owner of private premises may be liable if a child of tender years, although a trespasser, meets with an injury upon such premises if the things causing the injury have been left unguarded and exposed and are of such a character as to be attractive to a child, that the cases so holding are known as the turntable cases and the leading one is *Sioux City & P. R. Co. v. Stout,* 17 Wall. (U. S.) 657, which is cited and commented upon. The court then states that in many, if not all, the turntable cases stress is laid upon the facts that the turntable was in a public or open or frequented place, that it was dangerous, and left unfas-

tened, and when in motion was attractive to children and that the doctrine of these cases is, that the child cannot be regarded as a voluntary trespasser because he is induced to come upon the turntable by the defendant's own conduct. The opinion then continued: "We are unable to see any substantial difference between the turntable cases and the case at bar. Here was a half a block of ground in a populous city, bounded on two sides by public streets and on the third side by a public alley, with an opening of some 40 feet in the fence upon the street on the south side and an opening of equal dimensions in the fence upon the alley on the north side; with a causeway running from one opening to the other, diagonally across the premises, inviting approach and actually used for passage by men and teams. Upon this half block was a dangerous pond or pit, in which the water was always 5 or 6 feet deep and sometimes 14 feet deep. Logs and timbers floated about in this pond and boys had for some time been in the habit of playing upon them in the water. The city authorities had been notified of its attractiveness to children and of its dangerous character. They not only suffered the pond to remain undrained but the fences around it to be broken down in some places and to be actually removed in others. The deceased boy, Frank McMahon, is proven to have entered the premises at the opening in the fence on the alley. This opening was only 17 feet from the barn of Soady, where he dismounted from the wagon on which he had been riding. The place where he was seen playing in the water was only a few feet from this opening on the public alley. The love of motion which attracts a child to play upon a revolving turntable, will also attract him to experiment with a floating plank or log which he finds in a pond within his easy reach."

*Howard v. City of Rockford*, 270 Ill. App. 155, also relied upon by appellee, was an action brought by the administrator of the estate of Harry A. Howard, Jr.

to recover damages by reason of the death of plaintiff's intestate who was drowned in a stone quarry which had filled with water. In affirming the judgment of the trial court this court said (p. 158): "The record shows that this body of water in question was created by, and upon the property of, the city of Rockford, appellant, by a rock quarry extending below the water level, causing a pit to be filled with water. The body of water so created covered about a half a block in area on appellant's property. This pool was surrounded on three sides by dwelling houses where many small children lived. It was in the dwelling house portion of the corporate city of Rockford. The pool was in no way guarded or fenced, so as to be inaccessible to, or to keep small children of the age of the plaintiff's intestate from freely and easily going upon the property. There was no fence on two sides of the property. The evidence clearly establishes that the appellants, through its officers, had for many years known that small children from the age of 4 years to 8 years and upwards repeatedly went upon this property, attracted there by the quarry, pool, and boards upon the water, buildings and other attractions alluring to their childish curiosity and as a place to play." The court then cited and quoted from the case of *Wolczek v. Public Service Co. of Northern Illinois,* 342 Ill. 482, stating that the rule recognized in this State as to implied invitations is that where the owner of the premises maintains a dangerous condition or thing of such a character that he may reasonably anticipate that children, who by reason of tender years are incapable of exercising proper care for their own safety, are likely because of their childish instincts, to be attracted to the dangerous thing and thereby exposed to dangers, he is required to use reasonable care to protect them from injury, provided it is shown that such dangerous conditions or things are so located as to attract children from the street, playground or place where they have a right to be.

We have examined the other cases cited and relied upon by counsel for appellee. The factual situation in them, as well as in the *McMahon, Howard* and *Wolczek* cases, *supra,* is entirely different than in the instant case and their holdings would not, in our opinion, sustain the affirmance of the judgment of the trial court upon the facts as they appear in the record in this case.

In 20 R. C. L. 96 (Negligence, Par. 85) it is said: "Ponds, pools, lakes, streams and other waters embody perils that are deemed to be obvious to children of the tenderest years, and, as a general proposition, no liability attaches to the proprietor by death resulting thereupon to children who have come upon the land to bathe, skate or play," citing numerous cases from various jurisdictions in support of the text, including *Heimann v. Kinnare,* 190 Ill. 156. The text then quotes from *Barnhart v. Chicago, M. & St. P. Ry. Co.,* 89 Wash. 304, 154 Pac. 441, L. R. A. 1916 D 443 where it was held that the railway company was not liable for the death by drowning of an eight year old boy in a pond located outside the city limits of the City of Snohomish, Washington, on the right of way of the defendant company. The court in the *Barnhart* case held that the pond was not an attractive nuisance and referred to *City of Pekin v. McMahon,* 154 Ill. 141, *supra.* In the course of its opinion it says: "That a pond of water is attractive to boys for the purposes of play, swimming and fishing no one will deny. But its being an attractive agency is not sufficient to subject the owner to liability. It must be an agency such as is likely, or will probably result in injury to those attracted to it. That many boys every year lose their lives by drowning, is a matter of common knowledge. But the number of deaths in comparison to the total number of boys that visit ponds, lakes or streams for purposes of play, swimming and fishing, is comparatively small. It would be extending the doctrine too far to hold that a pond of water is an attractive nui-

sance and therefore comes within the turntable cases.''
The author of the article on Negligence in 20 R. C. L.
97 goes on to say that a right of recovery has been denied in cases where children from five to eleven years
of age have lost their lives by drowning, although the
property owner may know of the habit of children to
visits waters on his premises.

In *Heimann v. Kinnare,* 190 Ill. 156, it appeared
that plaintiff's intestate was a boy between thirteen
and fourteen years of age and with his brother who
was between fifteen and sixteen years of age went to
a clay hole to see whether the ice was strong. The clay
hole was a pond 150 feet by 200 feet in dimensions
and located on a forty acre tract of land belonging to
the defendant located in the City of Chicago and was
bounded by Southport, Ashland, Wrightwood and
Diversey avenues. The decedent had resided in the
neighborhood for a number of years and had been in
the habit of fishing and swimming therein during the
summertime and skating thereon during the winter
and had skated thereon two days before the accident.
There was a hill sloping down to the water and the ice
was broken around the bank. As the boys approached
the clay hole the decedent ran ahead, down the hill,
jumped over the water and onto the ice and the ice
gave way and he was drowned. In the trial court
plaintiff had a judgment which was affirmed by the
Appellate Court. Reviewing the record the Supreme
Court held that the trial court erred in not instructing
the jury to find for the defendant. In the course of its
opinion the court said that a boy between thirteen and
fourteen years of age knows as well as a man that a
pond like this one is not a safe place upon which to go
when the ice is broken at the edge and that if he, with
the knowledge of such danger, carelessly and recklessly goes upon such pond and loses his life, his age
will not excuse him. The court said that *City of Pekin
v. McMahon,* 154 Ill. 141, was decided correctly upon

the facts but that the boy who lost his life was eight years of age and the pool of water in which he was drowned was located immediately adjoining one of the public streets of the City of Pekin and that the city, prior to the accident, had been notified of the dangerous character of the place where the accident occurred but had neglected to remedy the same.

*Mindeman v. Sanitary Dist. of Chicago,* 317 Ill. 529, held the canal of the sanitary district was not an attractive nuisance and reversed the judgment of the Appellate Court which affirmed the judgment of the trial court in favor of the administrator of the estate of a five year old boy who was drowned in the canal of the defendant. In the course of its opinion the court, on page 533, said: "It is sufficient to say that courts seem to be of one mind in holding that a canal, pond, or other open body of water on private property, is not of itself an attractive nuisance, as that term is used in describing an instrumentality which will render the owner liable for injuries to a child attracted to and injured by it, (citing cases). The case of *City of Pekin v. McMahon, supra,* is not in conflict with these authorities. In that case this court did not hold that a pond of water was an attractive nuisance, but it held that a pond of water in which floating logs on which children were in the habit of playing were permitted to remain when maintained near a driveway in a populous city, was under the circumstances such a dangerous instrumentality attractive to children as to render the owner liable for the drowning of a child playing there."

In *Blough v. Chicago Great Western Ry. Co.,* 189 Iowa 1256, it was held that a railway company was not liable for the drowning of a five year old child in an unfenced pond on a railroad right of way, formed by the accumulation of water in a borrow pit, about which children habitually played, there being nothing about the place to render it more attractive than natural

ponds or streams of water. In the course of the opinion in this case it was stated that an analysis of the decisions in which a body of water has been held to be an attractive nuisance shows that in each there was some, artificial feature other than the mere water and its location rendering the place peculiarly dangerous to children, such as the floating apron in the reservoir in *Price v. Atchison Water Co.*, 58 Kan. 551, 50 Pac. 450; the sewer trough on piles in *Kansas City v. Siese*, 71 Kan. 283, 80 Pac. 626; and the floating logs and planks in *City of Pekin v. McMahon*, 154 Ill. 141.

In *Stendal v. Boyd*, 73 Minn. 53, 75 N. W. 735, 42 L. R. A. 288, an owner of an uninclosed lot in a populous part of a city, in which he had excavated a hole six or seven feet high in quarrying stone and which had become filled with water, was held not liable for the drowning of a child therein. In the course of its opinion the court said: ''The doctrine of the turntable cases is an exception to the rule of nonliability of a landowner for accidents to trespassers on his premises from visible causes. . . . If the owner must guard an artificial pond on his premises, so as to prevent injury to children who may be attracted to it, he must, on the same principle, guard a natural pond; and, if the latter, why not a brook or creek, for all water is equally alluring to children.''

In *Emond v. Kimberly-Clark Co.*, 159 Wis. 83, it appears that the defendant had created a pool on its property in close proximity to the main street of a village. In holding the defendant not liable for the drowning of a four year old child the court said: ''To require all natural or artificial streams or ponds so located as to endanger the safety of children to be fenced or guarded would, in the ordinary settled community, practically include all streams or ponds, be they in public parks or upon private soil, for children are self constituted licensees, if not trespassers, every-

where. And to construct a boy-proof fence, at a reasonable cost, would tax the inventive genius of an Edison.''

In *Sullivan v. Huidekoper,* 27 App. D. C. 154, 5 L. R. A. (N. S.) 263, the court said: ''The cases holding that there is no duty upon the part of a real estate owner upon whose land is a pond or other body of water to keep his land safe for trespassers, even when those trespassers are children, seem to us to be founded upon and supported by reason and common sense. The primary duty to guard and protect a child against patent and unconcealed dangers devolves upon the parent and not upon a stranger. . . . To hold landowners responsible under such circumstances would be to impose upon them an oppressive burden and shift the care of children from their parents to strangers. Every man who has been brought up with the freedom allowed to American boys knows that you might as well try to dam the Nile with bulrushes as to keep boys away from ponds, pools and other bodies of water.''

Following the report of several attractive nuisance cases, among them *Ramsey v. Tuthill Building Material Co.,* 295 Ill. 395, 36 A. L. R. 23 and *United Zinc & Chemical Co. v. Britt,* 258 U. S. 268, 36 A. L. R. 28 and beginning on page 34 of 36 A. L. R. will be found a very exhaustive annotation on the attractive nuisance doctrine. The cases with reference to ponds and pools of water are collected on pages 224 to 237, inclusive. The author of the annotation states (p. 224) that the weight of authority is to the effect that the attractive nuisance doctrine does not apply to ponds,—at least, where there is no unusual danger and in order to establish liability under this doctrine, he concludes, that it must appear that the liklihood of injury and not the liklihood of children being attracted, is strong. The annotator then says: ''The fact that children occa-

sionally fall from trees which they are attracted to climb, or are sometimes drowned in water in which they are tempted to play, does not impose on the landowner the duty to see that his trees are not climbed by them or that his pond is fenced or drained away. The children who fall from trees or are drowned while playing in the water, are, after all, but a small percentage of those who are attracted to do these things. Accidents of this kind, while always possible, are not so likely to happen that there should be a duty to guard against them.''

In *Stendal v. Boyd,* 73 Minn. 53, 75 N. W. 735, 42 L. R. A. 288, (hereinbefore referred to and cited in the foregoing annotation, 36 A. L. R. 237, 238) the court, after reviewing many authorities, said that with the exception of *City of Pekin v. McMahon,* 154 Ill. 141, *supra,* the courts of last resort, including those which recognize the doctrine of the turntable cases, have uniformly denied the liability of a landowner for injuries to trespassing children by reason of open and unguarded ponds and excavations upon his premises. In *Mindeman v. Sanitary Dist. of Chicago,* 317 Ill. 529, *supra,* our Supreme Court, referring to the same case, *City of Pekin v. McMahon,* 154 Ill. 141, *supra,* said that the *McMahon* case did not hold that ''a pond of water was an attractive nuisance.''

In *Thompson v. Illinois Cent. R. Co.,* 105 Miss. 636, 63 So. 185, 47 L. R. A. (N. S.) 1101, the court affirmed the judgment of the trial court which sustained a demurrer to a declaration which sought a recovery against the railroad company because a nine year old boy waded into a pond created by the defendant and was drowned, the pond being located in the woods adjoining its main line and one half mile from the resident portion of the City of McComb, it being charged that the defendant had notice that children resorted there to play. In the course of its opinion the court

said: ''Scattered over the length and breadth of the land are innumerable ponds and lakes, artificial and natural and occasionally a boy or man loses his life while wading or bathing in such body of water. If, as a matter of law, the owners of fish ponds, mill ponds, gin ponds and other artificial bodies wherein it is possible that boys may be drowned, can be held guilty of actionable negligence, unless they inclose or guard the same, few will be able to maintain these utilities and to our minds an intolerable condition will be created.''

In the instant case this pond was an ordinary body of water. There was nothing unusual, exceptional or peculiar about it. It was just as dangerous as any body of water but not any more so. This pond cannot be held to embody perils that were not obvious to plaintiff's intestate even though he was a child of seven years and three months of age. In order to bring this pond under the attractive nuisance doctrine it must be such an attractive agency as will likely or probably result in injury, and it is a general rule that there is no liability for injuries from dangers that are as obvious and well known to the person injured as to the owner of the premises. The element of unknown, concealed or hidden danger is here entirely absent. Under the facts disclosed by this record and under the authorities of this State, applicable to these facts, we are clearly of the opinion that this pond is not an attractive nuisance and we so hold. Otherwise every farmer who has a pool or pond of water on his land for watering stock and every orchardist who has impounded a pool of water on his premises for spraying purposes, would be liable in the event a boy or girl was drowned therein.

If, however, this pond be an attractive nuisance, still there can be no recovery here. The gravel hills and buildings located upon appellant's property

could be seen from the Wood's home and from public places where appellee's intestate had a right to be but the pond itself could not be. The record here is bare of any evidence that plaintiff's intestate or his sister knew anything about appellant's property or the pond or any of the conditions thereon. It does not appear that either of them had ever been on the premises of appellant or any part thereof, prior to the afternoon they were drowned. No one knows the course they followed after they left the yard in which they were playing near the home of their parents. How they proceeded after they entered appellant's premises does not appear. Appellant cannot be held liable under the allegations of the instant complaint, unless the trespass was induced by the allurement of a dangerous condition known to plaintiff's intestate in advance. In *McDermott v. Burke,* 256 Ill. 401, at pages 406, 407, the court stated that it was a necessary element of liability under the attractive nuisance doctrine that the thing which causes the injury is tempting to children and to constitute a means of attracting them upon the premises which the owner should anticipate and that the dangerous thing must be so located as to attract them from the street or some public place where they may be expected to be. ''An owner'' continues the court, ''would not be liable if he maintained something for his own use which might be dangerous but which only be found by children going upon his premises as trespassers.''

In *Mindeman v. Sanitary Dist. of Chicago,* 317 Ill. 529, *supra,* the court said that the spoil bank of the drainage canal was the thing visible from the public street and the place where plaintiff's intestate first came to play, that the spoil bank was not dangerous and did not contribute to the injury of the child and that the water in the canal in which the child was drowned was not visible from the public street and did not attract the boy onto the premises of the defendant.

In the instant case, if it be granted that this pond was dangerous within the meaning of the attractive nuisance cases, appellant would not be liable because the only conclusion that can be arrived at, under the evidence, is that the Wood children found that pond after they entered appellant's premises as trespassers. The fact that there is some slight evidence in this record that children have gone to this pond for pleasure and that defendant knew it cannot be construed as an invitation for them to go there. An invitation cannot be implied from a mere tolerance of trespassers and an invitation is not implied in favor of trespassing children any more than on behalf of adults. Upon the day in question appellee's intestate and his sister were not upon appellant's property by invitation. They were there either for pleasure or to gratify their curiosity.

After a careful consideration of this record, we are unable to find any evidence showing or tending to show that defendant is guilty of the wrongful act charged in this complaint which caused the death of plaintiff's intestate. The trial court therefore erred in not directing a verdict of not guilty. In view of this conclusion, it is not necessary to consider any of the other errors relied upon for reversal. The judgment of the circuit court of Winnebago county is reversed.

*Judgment reversed.*