CAROL ANN CHAPMAN, Adm'r of Estate of Randall Scott Chapman, Deceased, Plaintiff-Appellant, *v.* CHARLES FRITZCHE *et al.*, Indiv. and d/b/a Fritzche's Estates, Defendants-Appellees.

Second District   No. 77-22

Opinion filed June 1, 1978.

Karlin & Fleisher, of Chicago, for appellant.

Michael T. Caldwell, of Caldwell, Berner & Caldwell, of Woodstock, for appellees.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

This appeal arises out of a wrongful death action. The jury returned a verdict in plaintiff's favor but awarded only one dollar in damages. On motion of the defendant the trial court granted a directed verdict in favor of the defendant.

The plaintiff is the mother and administrator of the estate of Randall Scott Chapman, her five-year-old son, who drowned when he fell through the ice in Lily Lake, a small lake in McHenry County.

The land adjacent to the lake is owned by the defendants. However, they do not own the lake. The plaintiff, her husband and her children rented a small house on the shore of Lily Lake from the defendants around December of 1969. There was testimony to the effect that there were picnic tables at the beach along the lake and space for parking. There was also some playground equipment, including teetertotters. There were two slides out in the lake, one about six feet high, the other about eight feet high. The testimony was somewhat inconsistent on the point but it appears that the slides were about 50 to 60 feet out from the shore, at the time of Randy Chapman's death.

On November 23, 1970, Mrs. Chapman went to work as usual. The babysitter was late in arriving and the older sister, Patty, age seven, stayed home with Randy and another small brother. Their mother had warned them not to play on the ice, which had formed part way out into the lake, there being open water however, a little beyond the end of the bigger slide. Exactly how far out beyond the end of the slide the water was frozen is not clearly established by the testimony. Patty testified the ice was "out in front" of the bigger slide, that is, beyond it. Mrs. Chapman testified that the ice had started to freeze the night before and in spots you

could see water and there was water on top of the ice, near the big slide.

Patty, who was the only actual eyewitness, testified that at noon, when their mother came home, she gave them permission to go outside to play but told them not to go on the ice. In the afternoon, Patty, Brian and Randy went out to play. First they played in the yard; then they moved to the beach. After while they began to play on the ice beyond the shoreline. They had a ball and during the course of throwing the ball to each other, the ball was overthrown or missed by one of them and went out into the lake, landing somewhere beyond the frozen part of the lake in the vicinity of the bigger slide. Randy went out to get it but could not reach it. According to Patty, Randy climbed up onto the slide and came down the chute and sitting Indian-fashion reached out, but could not reach the ball. He then went back and tried to go round one end of the slide, holding on to it as he walked toward the ball. Suddenly, the ice gave way and Randy fell into the water and was drowned.

There was considerable uncertainty in the testimony of police officer Vandervalle, who pulled Randy's body from the water, as to exactly how far the body was from the end of the slide when he pulled it out. He testified that he started to walk out on to the ice, but it cracked under him so he went back to shore and got a picnic table and was able to get out as far as the end of the slide by using the picnic table, turned upside down to spread the weight. He was still not able to reach the body when he got to the end of the rope he had tied around his waist and which another officer was holding at the other end. From his testimony it would appear that the officer holding the loose end of the rope was at the slide and that Officer Vandervalle used the length of a 50-foot rope beyond the slide and then was still short of reaching the boy and had to use another 10 feet more to reach him. This would place the body about 50 to 60 feet beyond the slide. However, since the precise point where the officer holding the loose end of the rope was standing in relation to the length of the slide was not clear, it is not certain whether the boy's body was found 10 feet beyond the slide, or 50 feet beyond it, and whether the testimony referred to the beginning of the slide, or the further end or chute. In any event, however, it appears to have been the testimony of the officer that Randy's body was found at least 10 feet and possibly 50 feet beyond the end or chute of the slide, and Officer Vandervalle testified he had to stand on the picnic table to avoid breaking through the ice, apparently there was ice of some sort up to that point, although the testimony is not clear because Patty testified there was open water beyond the end of the slide.

Herbert Fritzche testified that his mother had owned certain property adjacent to the lake and when she passed away in 1970 he became executor of her estate. Previous to that he had helped out in the summer time at the concession stand, but no charge had ever been made by the

Fritzches for admission to the lake and beach area. In 1970, the defendants owned some of the land, but not all of the land encompassing the lake. They did own the beach portion, the equipment, such as the picnic tables, teetertotters and swings, in the picnic area, and the slides, which were placed a little distance out into the lake. They also had a raft in the lake and a rope with floats designating a swimming area. The testimony of Mr. Fritzche's daughter was excluded because defense counsel had not listed her as a witness in pretrial discovery. He offered her testimony just before trial, having learned that she had knowledge about the slides being removed from the water in October of 1970; however, her testimony was objected to as being in violation of discovery rules and the objection was sustained.

The defendants admitted ownership of the slides but their maintenance man, George Ross, testified that he believed the slides had been removed from the water in October 1970, as was the annual custom. There was no explanation of how they got back into the water, if they had actually been removed.

Mr. Ross testified he had seen the Chapman children on the ice previous to the drowning and had told them to get off the ice and his fellow workman had escorted one of the boys—he believed it was Randy—back to the Chapman house. Later he had again seen one of the boys he believed to be Randy on the ice and again his fellow worker had taken the boy home.

At the outset of this opinion, we must dispose of a technical objection to this appeal raised by the defendants. The defendants contend that the appeal must fail on procedural grounds because the plaintiff failed to properly preserve any questions for review since she failed to set out the particular grounds for review in her post-trial motion. Moreover, defendants contend the appeal should not be heard, because after the trial court had granted the motion for a directed verdict and entered its order accordingly, the plaintiff failed to file a subsequent post-trial motion to review the judge's order granting the directed verdict.

It appears that at one time it was considered to be mandatory that a post-trial motion be filed, objecting to a directed verdict, before an appeal could be filed from the order directing the verdict (*Malcomson v. Bennett* (1966), 69 Ill. App. 2d 281 (abstract); *Farnsworth v. The Shops Building* (1966), 77 Ill. App. 2d 44). However, a subsequent opinion of this court in *Larson v. Harris* (1966), 77 Ill. App. 2d 430, reversed the *Malcomson* opinion and the Illinois Supreme Court settled the matter, holding that a post-trial motion was not required in *Keen v. Davis* (1967), 38 Ill. 2d 280. The court said:

> "Supreme Court Rule 240, effective January 1, 1967, reads: 'The order of the court granting a motion for a directed verdict is

effective without any assent of the jury.' It follows the prevailing trend of doing away with useless form and, as noted by the committee comment, the new rule 'eliminates an archaic and futile ceremony.' We see nothing in the statute to indicate a legislative intent that a post-trial motion be filed after a directed verdict." 38 Ill. 2d 280, 282.

■■ We hold, therefore, that the failure to file a post-trial motion objecting to the order directing a verdict in the defendants' favor was not fatal to this appeal. This, we think, also disposes of the contention that the post-trial motion was too general, since the appeal itself addressed the substantive issues to be decided here, that is the issue of whether the directed verdict was proper as a matter of law.

In this appeal the plaintiff contends that a new trial should have been granted because (1) the jury's verdict of one dollar was the result of confusion or compromise on the jury's part, and in any event was inadequate as a matter of law and (2) the court erred in directing a verdict for the defendants at the close of the evidence. We will discuss the issue of directed verdicts first since if the trial court's action in that regard was correct, the first point is irrelevant.

The plaintiff contends that the facts of this case bring it within the guidelines set out in *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, where our supreme court discussed and modified to some extent the previous conceptions of the doctrine of attractive nuisance in Illinois. In that case the defendant lumber company deposited a load of lumber on a lot at the instance of the contractor who was erecting a house on the adjoining lot. Children were known to play in the vicinity of the lot where the lumber was piled. Apparently the lumber was not stacked solidly and safely by the defendant and when some children going by shortly after it was deposited on the lot, began to play on the pile of lumber, it collapsed, injuring the plaintiff, an 11-year-old boy. The case was tried on the attractive nuisance theory and the plaintiff recovered a judgment. However, on appeal, the appellate court reversed, holding that the lumber company had no duty toward the plaintiff under ordinary rules of negligence and the exception in favor of minor children under the attractive nuisance doctrine did not apply because the lumber company did not either own or control the premises on which the injury occurred and, in any event, an ordinary pile of lumber was not an attractive nuisance.

Upon appeal to the Illinois Supreme Court, however, that court reversed, saying:

"In the case at bar the questions whether the lumber was so piled as to create an unreasonable danger to children playing thereon, and whether it was so attractive to children as to suggest the

probability that children would climb onto it, were questions for the jury under the circumstances shown in the record." *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 621.

The court then went on to comment generally on the doctrine of attractive nuisance, indicating its dissatisfaction with previous applications of that doctrine in various cases and summing up a new concept of the doctrine as follows:

> "In view of the foregoing conflict and the fact that, as many courts have declared, a child in his youthful fancy, imagination and ingenuity can make a plaything of almost anything and is attracted by almost everything, the only proper basis for decision in such cases dealing with personal injuries to children are the customary rules of ordinary negligence cases." 5 Ill. 2d 614, 624.

While the language quoted above might indicate that the attractive nuisance doctrine has been abandoned entirely in Illinois, that such was not the intent is evidenced by the language appearing on the next page of the *Kahn* opinion:

> "It is recognized, however, that an exception exists where the owner or person in possession knows, or should know, that young children habitually frequent the vicinity of a defective structure or dangerous agency existing on the land, which is likely to cause injury to them because they, by reason of their immaturity, are incapable of appreciating the risk involved, and where the expense or inconvenience of remedying the condition is slight compared to the risk to the children. In such cases there is a duty upon the owner or other person in possession and control of the premises to exercise due care to remedy the condition or otherwise protect the children from injury resulting from it. (*Wagner v. Kepler*, 411 Ill. 368.) The element of attraction is significant only in so far as it indicates that the trespass should be anticipated, the true basis of liability being the foreseeability of harm to the child." 5 Ill. 2d 614, 625.

Whether we apply the simple rules of ordinary negligence cases, or the modified doctrine of attractive nuisance set forth in *Kahn,* it is evident that there is no liability for the child's death on the part of the defendants in this case. Eliminating the requirement of ownership of the lake in which the slide stood and laying aside the question of whether the defendants permitted or were aware of the presence of the slides in the lake (as to which point certain tendered defense evidence was excluded) a key element of liability in negligence cases is lacking here—the element of proximate cause. Whatever standard is used some form of negligence must be the basis for the plaintiff's action and without some showing that the defendants' alleged negligence or failure to act—apparently in this

case the failure to remove the slides from the water—was the proximate cause of the boy's death, the action must fail. In the *Kahn* case as in every other case of death or injury to a child based on the presence of an object or condition attractive to and potentially dangerous to a child, the dangerous condition or object was either the agency which caused the injury or the allurement which caused the child's exposure to other danger in the vicinity. In *Kahn* it was a lumber pile itself which caused the injury. In those cases where there was no particular allurement except a body of water, such as the post-*Kahn* case of *Adams v. Brookwood Country Club* (1958), 16 Ill. App. 2d 263, which involved the drowning of a nine-year-old boy in Salt Creek, where it ran through the environs of a private country club, the court did not permit recovery, since there was no act or failure on the part of the owner of the country club premises which proximately contributed to the boy's death.

In *Driscoll v. C. Rasmussen Corp.* (1966), 35 Ill. 2d 74, where a boy was burned when paint which he had extracted from a can in a trash pile and spilled on his clothing ignited, the same justice who wrote the *Kahn* opinion held there was no issue for the jury as to the defendant's negligence. The court said:

> "The general rule is that liability must be based on some fault. The injury must be the natural and probable *result* of a negligent act or condition and be of such a character as an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence." (Emphasis added.) 35 Ill. 2d 74, 78.

It cannot be said with any logic that in the case before us the boy breaking through the ice and drowning was the *result* of the slide being in the water. The boy was trying to retrieve his ball and fell through the ice in trying to do so; the fact that there was a slide in the immediate vicinity where the ball landed or rolled onto the ice had no relevance to the pursuit of the ball. So far as the only eyewitness testimony went—that of his sister, Patty—the slide was neither the inducement to go out on to the ice nor a contributing factor to the ice breaking up. The testimony is clear that the children were not playing on the slide—they were playing on the beach and according to the maintenance man, Ross, he saw Randy actually out on the ice on another occasion and his co-worker took the boy back home. There was nothing in Patty's testimony to indicate that there was any connection between the slide and Randy going out to retrieve his ball.

While there have been many recent cases affirming the dismissal of actions for personal injuries to minors since the *Kahn* case (see *Lance v. Senior* (1967), 36 Ill. 2d 516, where a nine-year-old boy who was a hemophiliac swallowed a needle; *Gille v. Winnebago County Housing Authority* (1970), 44 Ill. 2d 419, where a 9½-year-old boy stood too close to

a trash burner; *Donehue v. Duvall* (1968), 41 Ill. 2d 377, where a child threw a clod of dirt from a pile of dirt on the defendant's premises at another child), perhaps the case most nearly analogous to that before us, since it bears on the question of proximate cause, is *Carroll v. McGrath* (1974), 25 Ill. App. 3d 436. In that case the defendant had constructed a tree house (actually an elevated house, since it was not in a tree) for his children with a trap door to enter from below. He had placed a sandbox underneath the house. The children, aged three and five, residents of the neighborhood, visited the premises and the five-year-old climbed up through the trap door and entered the tree house, while the smaller child played in the sandbox below. The older child dropped a rectangular metal milk box cover down through the trap door, which struck the plaintiff in the right eye, causing the loss of the right eye. The plaintiff sought recovery under the *Kahn* theory of liability. The trial court directed a verdict in favor of the defendant and the plaintiff appealed. In affirming the trial court's judgment, the appellate court said:

> "The final element in plaintiff's cause of action which must be considered is that of proximate cause. Initially, it must be determined if a question of fact arises under the evidence as to whether the injury sustained by plaintiff was the natural and probable result of the maintenance of a dangerous agency on defendants' property. In arguing that the injury was foreseeable plaintiff asserts the following: (a) that the proclivity of small boys to throw or drop objects which no longer hold their interest is a matter of common knowledge; (b) that both defendants testified they were aware that children brought toys into the sandbox; (c) that according to the testimony of defendant Max McGrath, on at least one occasion, play materials were also found on the tree house floor; and (d) that defendant Max McGrath indicated that he anticipated some dangers arising from the tree house by his installation of a hasp latch with padlock on the trapdoor." 25 Ill. App. 3d 436, 443.

The court rejected the plaintiff's theory, saying:

> "The direct and immediate cause of plaintiff's injury was the careless manner in which his brother dropped the milkbox cover down through the trapdoor of the tree house. Contrary to plaintiff's assertion, it matters not that James Carroll did not drop the cover with the specific intention of hitting the plaintiff, nor that James was legally incapable of negligently doing such an act. Regardless of its own individual legal character, the act of plaintiff's brother was an independent act and constituted an efficient intervening force which brought about the injury involved. In *Driscoll v. Rasmussen Corp., supra,* the court held that

a defendant could not have reasonably foreseen that in the act of maintaining a trash pile with partially filled cans of paint, a child would spill some of the paint on his clothing and later be injured when coming into contact with fire from an unknown source. There, the proximate cause of the injury was held to be the fire with which plaintiff come [sic] into contact and not the defendant's maintenance of the trash pile with cans of paint in it. Similarly, in *Donehue v. Duvall* (1968), 41 Ill. 2d 377, 243 N.E.2d 222, the court stated that the propensity of small boys to throw things at each other is a matter of common knowledge, but held that if the objects left accessible to them are not inherently dangerous, the resulting harm is not reasonably foreseeable. There, the defendant had maintained a dirt pile on his property without knowledge that glass was embedded in some of the dirt clods. The plaintiff was injured as a result of being hit with a glass-embedded clod thrown by a playmate. The court held that the proximate cause of the injury was the dirt clod being thrown at plaintiff, an act with which defendant had nothing to do. In the instant case, as in *Driscoll* and *Donehue*, the defendants' maintenance of the alleged dangerous agency could at most be only a remote cause of plaintiff's injury because from its maintenance the defendants could not have reasonably foreseen the independent force which intervened to bring about that injury.

    * * * The cause of plaintiff's injury was not the alignment of the structure, but rather was the act of his brother. If any harm could have been anticipated or foreseen, it did not include the deliberate dropping of the cover. We conclude that the evidence shows as a matter of law that the act of plaintiff's brother in dropping the milk-box cover was unforeseeable and was the proximate cause of the injury sustained. Therefore, the trial court did not err in granting defendants' motion for a directed verdict." 25 Ill. App. 3d 436, 443-45.

In the case before us it is even more clear that the presence of the slide was not the proximate cause of either Randy Chapman being on the ice or his falling through the ice. He placed himself in a position of danger in order to retrieve his ball. It is an obvious misuse of the attractive nuisance doctrine to associate the slide with the boy's death, under the circumstances here, and viewed as a simple negligence action it is just as plain that the slide was not the proximate cause of the boy's death and the vital element of proximate cause through an instrument or agency controlled by the defendants is entirely missing. The causative link is simply not present in this case.

There is nothing in the testimony of Randy's sister Patty—the only

eyewitness to the tragedy—to suggest that the inducement for Randy to venture out onto the thin ice was anything other than the lost ball. To connect the boy's presence on the ice with the presence of the slide is to ignore the only relevant testimony on this point. The children were playing ball in their own yard and they decided to move to the beach to play. It is logical to suppose that they had more open space on the beach and the slides would reasonably have been opposite a fairly open space on the beach as, indeed, is shown in the photos. Whether Randy would have ventured out on the ice had they not overthrown the ball is purely speculative, although the testimony of the witness, Ross, suggests he was seen on the ice earlier in the day and it is well known that small boys often venture out onto newly formed ice just to test it, with tragic results. The slides themselves appear to have been a mere coincidence, not a cause, of Randy's exposure to danger.

■■ ■ The owner of property near which children play is not automatically the insurer of children's safety. (See *Merkousko v. Janik* (1973), 14 Ill. App. 3d 343; *Beechy v. Village of Oak Forest* (1973), 16 Ill. App. 3d 240; *Phillips v. J. F. Martin Cartage Co.* (1976), 42 Ill. App. 3d 890.) Whether the case is viewed as one of allurement, that is attractive nuisance, or as a simple negligence action as modified by the principles of *Kahn*, it must fail because the evidence does not establish the slide as the proximate cause of the boy being on the ice.

The judgment of the circuit court of McHenry County is affirmed.

*Judgment affirmed.*

NASH and WOODWARD, JJ., concur.