Anthony Stewart, a Minor by Charles Stewart, His Father and Next Friend, Plaintiff-Appellee, v. Elmer DuPlessis, Individually and d/b/a A. D. Plastering Company, and Edgeworth and Young, a Partnership, Defendants. Elmer Du-Plessis, Individually and d/b/a A. D. Plastering Company, Defendant-Appellant.

### Gen. No. 48,943.

First District, First Division.

June 12, 1963.

Rehearing denied July 8, 1963.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (Oswell G. Treadway, of counsel), for appellant.

James A. Dooley, of Chicago, for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a personal injury action. Defendant, Elmer DuPlessis, appeals from a $60,000 verdict and judgment entered against him in favor of plaintiff for the loss of an eye.

On August 27, 1951, defendant (doing business as A. D. Plastering Company) was the plastering contractor for a home under construction. Plaintiff, then a child of 11, with four friends (ages 10 to 15 years), entered the house at the invitation of the owner's son. Defendant's employees had left the premises at about 4:30 in the afternoon, and the boys entered the house at about 7:00 in the evening. Upon entering the living room, the boys saw a wooden platform about 4′ x 4′ standing on wooden horses. On the platform was a moist white substance, of the consistency of softened butter, formed in a circle about three feet across. The white substance was plasterer's lime, left by defendant's employees to "slake" overnight in preparation for its use the following morning. It was covered by some bags thrown across it.

Hydrated lime, as used by plasterers, is a caustic alkaline substance available as a fine white powder. Before use in plastering, this powder must be mixed with water and left to stand for a period, usually overnight. This is called "slaking" the lime. When mixed with water in the correct proportion, the lime has the consistency of softened butter. After standing overnight, the slaked lime is mixed with plaster and more water, and the resulting mixture is then ready to be applied. After the plaster has been added to the slaked lime, the mixture begins to harden rapidly.

Shortly after entering the living room, the boys commenced a game of hide and seek. While plaintiff

195

was out of the living room, the other boys began making "snowballs" out of the slaking lime; as plaintiff entered the hallway to meet the others, he was hit on the right side of his face by some of the substance thrown by the others. He started screaming and ran out onto the front porch, where the other boys attempted to remove the substance from his face and eyes. After relatively unsuccessful attempts, plaintiff went home. His mother attempted to remove the substance from his eyes with a towel and hot water. After a short time, he was taken to a clinic, and thence to the emergency room of a hospital, where an eye specialist treated him.. On October 12, 1951, another eye specialist removed his right eye.

Defendant contends that the trial court should have directed a verdict for defendant or, alternatively, that a new trial should be granted due to errors at the trial.

Defendant first argues that he owed plaintiff no duty "to take any safeguards to prevent plaintiff from injury," since defendant did not have control of the premises where the injury occurred, and thus had no authority to prevent plaintiff from entering the premises. The same contention was made by the defendant lumber company in Kahn v. James Burton Co., 5 Ill2d 614, 126 NE2d 836 (1955), and was there rejected by our Supreme Court. In the Kahn case, a child of eleven was injured at a construction site when a pile of unevenly stacked lumber shifted. The lumber company had no control of the premises, and its only contact with the work being done there consisted of its delivery of the lumber. In rejecting the lumber company's contention that its only duty was to the owner of the premises and to the contractor, our Supreme Court stated (p 620):

"The position cannot be sustained. In so far as the lumber company is concerned plaintiff was

196

not a trespasser; and if it should have reasonably anticipated that children might come upon the premises and be injured, the fact that it did not own or control the premises cannot relieve it from liability for the consequences of its negligence."

In the instant case, a number of witnesses testified that there were numerous children in the neighborhood, and that they played in the vicinity of the house under construction. The occurrence witnesses testified to previous visits to the home. Defendant himself testified that he visited the site every day, to inspect the work being done by his employees, and he indicated that he was familiar with the neighborhood and the presence of children there. From the testimony the jury could conclude that defendant knew or should reasonably have anticipated the presence of children on the premises. This being so, a duty arose to exercise ordinary care to avoid injury to children thus present. Kahn v. James Burton Co., 5 Ill2d 614, 126 NE2d 836 (1955); Halloran v. Belt Ry. Co. of Chicago, 25 Ill App2d 114, 166 NE2d 98 (1960).

■ Defendant next contends that hydrated lime is neither "imminently nor inherently dangerous," and that he therefore had no duty to guard or protect it and his failure to do so could not be negligence on his part. Given the testimony adduced at trial, the question is whether leaving slaking lime on premises frequented by children created a condition hazardous to children. We believe this is a question of fact to be resolved by a jury. As stated by our Supreme Court in Kahn v. James Burton Co., 5 Ill2d at 622:

> "The creator of certain conditions dangerous and hazardous to children because of their immature appreciation of such dangers and hazards must be held to a certain standard of conduct for

197

the protection of such children in accordance with the attendant circumstances and conditions. Account must be taken of the cost and burden of taking precautionary measures and of the right of families and society to rear and develop children with freedom of activity in their communities, without being subject to unreasonable risks which might cause serious injury or death to such children."

We conclude that defendant had a duty to exercise ordinary care with respect to plaintiff, and that whether he discharged such duty was a question of fact for the jury. "A verdict may not be set aside merely because the jury could have drawn different inferences or because judges feel that other conclusions than the one drawn would be more reasonable." Lindroth v. Walgreen Co., 407 Ill 121, 135, 94 NE2d 847 (1950).

█ █ Defendant's final point in support of his contention that he was entitled to a directed verdict is that the proximate cause of plaintiff's injuries was the act of his companion who threw the lime. Defendant thus argues that the act of the thrower was an intervening cause. However, "the intervention of independent concurrent or intervening forces will not break causal connection [between the original wrong and the injury] if the intervention of such forces was, itself, probable or foreseeable." (Johnston v. City of East Moline, 405 Ill 460, 464, 91 NE 2d 401 (1950).) The test to be applied is whether the first wrongdoer might reasonably anticipate the intervening cause as a natural and probable consequence of his own negligence. (Merlo v. Public Service Co., 381 Ill 300, 45 NE2d 665 (1943).) Whether the act of plaintiff's companion was, in itself, probable or foreseeable, is, on the record before us, a ques-

tion for the jury. As our Supreme Court stated in Ney v. Yellow Cab Co., 2 Ill2d 74, 84, 117 NE2d 74 (1954):

> "Questions which are composed of such qualities sufficient to cause reasonable men to arrive at different results should never be determined as matters of law. The debatable quality of issues such as negligence and proximate cause, the fact that fair-minded men might reach different conclusions, emphasize the appropriateness and necessity of leaving such questions to a fact-finding body. The jury is the tribunal under our legal system to decide that type of issue. To withdraw such questions from the jury is to usurp its function."

We conclude that defendant was not entitled to a directed verdict.

■ ■ Defendant next argues that various errors occurred at the trial, requiring reversal and remandment for a new trial. Defendant first contends that a new trial is required because the fact that defendant was insured was made known to the jury, thereby prejudicing defendant. It is, of course, improper to inform the jury, either directly or indirectly, that the defendant is insured against liability on a judgment that may be entered against him. (Kavanaugh v. Parret, 379 Ill 273, 40 NE2d 501 (1942).) However, a mistrial is not required where the subject of insurance is introduced by an inadvertent or unresponsive answer of a witness to a legitimate inquiry. (Williams v. Consumers Co., 352 Ill 51, 185 NE 217 (1933); Rench v. Bevard, 29 Ill App2d 174, 173 NE2d 1 (1961).) The reference to insurance in the instant case was made by defendant himself, in a nonresponsive answer to a proper question put by plaintiff's counsel. The record indicates that, on consideration, the court concluded that plaintiff's counsel did not

seek or anticipate defendant's unresponsive reference to insurance. The trial court was therefore correct in denying defendant's motion for a mistrial.

■■ Defendant next contends that the trial court erred in refusing to admit into evidence a portion of a hospital record, which contained a history of the cause of plaintiff's injury at variance with the testimony adduced by plaintiff. Defendant concedes that, as offered, the document was not admissible under the exception to the hearsay rule in favor of properly authenticated hospital records. (See, e. g., Plewe v. Chicago Motor Coach Co., 283 Ill App 57 (1935); Boss v. Illinois Cent. R. Co., 221 Ill App 504 (1921).) Instead, defendant contends that the record was receivable in evidence as a "statement against interest on the part of plaintiff."

We agree that admissions of a party-opponent may be offered in evidence against him, as an exception to the hearsay rule. (Jacks v. Woodruff, 9 Ill App2d 224, 132 NE2d 603 (1956); McCormick on Evidence, §§ 239–252 (1954).) However, in offering the record as substantive proof of the truth of the statements therein contained, defendant adduced no evidence whatsoever to show who transcribed the statement or who originally made it. In arguing that the statement must have been given by plaintiff, or by someone to whom he had told his story, defendant assumes that the statement is true and therefore *must* come from plaintiff, who knew the true facts of the occurrence. To argue thus is to reverse the correct procedure for qualifying an admission, since the statement is not receivable in evidence to prove the truth of the assertions made until it is proved to be, in fact, a statement by the party against whom it is offered. Defendant did not connect the record with plaintiff. As the record stands, it is hearsay upon hearsay, and the trial court properly denied its admission into evidence.

■ Defendant's next contention is that the trial court erred in giving seven instructions tendered by plaintiff, and in refusing to give one instruction tendered by defendant. We do not consider defendant's objections to five of plaintiff's instructions, since the grounds now urged against these instructions were not asserted by defendant at the instruction conference. Such objections cannot be raised for the first time upon appeal. Saunders v. Schultz, 20 Ill2d 301, 170 NE2d 163 (1960); Onderisin v. Elgin, J. & E. Ry. Co., 20 Ill App2d 73, 155 NE2d 338 (1959).

■ Defendant objected with respect to instruction No 16 on the grounds that it was repetitious, argumentative, and not in conformance with the pleadings of the plaintiff. This instruction informed the jury on the application of proximate cause in circumstances where an outside agency is also significant as a causal factor in producing the injury for which recovery is sought. As given, the instruction is IPI Instruction No 12.05. It was clearly relevant to the issues of the case, and we consider defendant's general objections groundless.

■ Defendant also objects to a portion of instruction No 19, which informed the jury of elements they might consider in assessing plaintiff's damages. The instruction (identical with IPI Instruction No 30.07) referred to "the value of earnings lost and the present cash value of the earnings reasonably certain to be lost in the future." Defendant objected at the instruction conference that there was no evidence before the jury to support any claim for future earnings. Such an instruction has been approved by our Supreme Court, in another case involving an 11-year-old plaintiff, where the evidence shows the injury to be permanent. (Wolczek v. Public Service Co., 342 Ill 482, 174 NE 577 (1931); see also Murphy v. Illinois State Trust Co., 375 Ill 310, 31 NE2d 305 (1941).) In the instant case, there can be no question that

201

plaintiff's injuries are permanent: he lost an eye and sustained permanent injuries to the muscles in the eye socket, to the extent that he is unable to retain an artificial eye. In addition, plaintiff testified to the effect of his injury on his ability to secure work. We conclude that defendant's objection to this instruction was properly denied.

 Defendant objects to the trial court's refusal to give his tendered instruction No 21. This instruction would have informed the jury as to the legal effect of dismissal of another defendant from the case. Plaintiff's amended complaint had joined as a defendant the masonry contractor on the house where the injury occurred, Edgeworth & Young, a partnership. This defendant was dismissed from the case at the close of all of the evidence, at which point the trial court informed the jury that "the Court has dismissed the second defendant, Young & Edgeworth [sic] as a matter of law." Defendant contends that the court's refusal of his tendered instruction in some way prejudiced him with the jury. We are unable to agree; considering the instructions as a sequence, and having regard to the trial court's explanation of its action to the jury, we believe the jury was properly instructed that a verdict against defendant could rest only on the evidence in the case and inferences properly derived therefrom. To give the proffered instruction would have been, at best, repetitious, and it was not error to refuse the instruction.

 Defendant's final contention is that the verdict of $60,000 is excessive in amount and unsupported by the evidence. The record indicates that plaintiff's injury was the loss of his right eye at the age of 11, in circumstances involving pain and suffering and the dislocation of his normal life. He incurred medical expenses of some $1,600 in paying hospital and doctors' bills, plus further weekly sums over a long period of time for medicines. His injury

202

resulted in disfigurement, worsened in plaintiff's case due to his inability to retain an artificial eye as a result of scarring of muscular tissues in his eye socket. Two operations to rectify the latter condition have proved unavailing. Plaintiff testified to the effect of his injuries on his applications for employment, indicating that he was at a disadvantage in competing with normal men in the economic world. We cannot say, on the record before us, that the award is so excessive as to indicate passion and prejudice on the part of the jury. Absent such a finding, the verdict of the jury will not be disturbed. Lau v. West Towns Bus Co., 16 Ill2d 442, 158 NE2d 63 (1959); Lubin v. Goldblatt Bros. Inc., 37 Ill App2d 437, 186 NE2d 64 (1962).

For the reasons indicated, the judgment appealed from is affirmed.

Affirmed.

BURMAN, PJ and ENGLISH, J, concur.