JOSEPH CARROLL, a Minor, by JAMES E. CARROLL, his father and next friend, Plaintiff-Appellant, v. MAX McGRATH et al., Defendants-Appellees.

(No. 59419;

First District (3rd Division)—December 31, 1974.

Karlin and Fleisher, of Chicago (Barry M. Woldman, of counsel), for appellant.

Taylor, Miller, Magner, Sprowl and Hutchins, of Chicago (James J. Hoffnagle, of counsel), for appellees.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Joseph Carroll, a minor, by James E. Carroll, his father and next friend, brought action for personal injuries sustained when he was struck by an object dropped from a "tree house" in defendants' backyard. Upon a trial by jury, defendants, Max and Darlene McGrath, rested without further testimony at the close of plaintiff's case. A directed verdict was entered in favor of defendants. Plaintiff appeals, contending error in directing the verdict and in excluding the testimony of plaintiff's experts.

Approximately 2 years prior to the accident, defendant Max McGrath constructed a tree house in the backyard of his home, using materials purchased locally and following plans indirectly purchased from Craft Pattern Company. The structure was not in fact attached to a tree but was a free-standing cabin measuring 6 feet in width and 8 feet in length, supported several feet above the ground by wooden posts at each corner. Access to the tree house was provided by means of a wooden ladder extending from the ground to a trapdoor located in the floor of the tree house. Within 2 months after its erection defendant Max McGrath formed a sandbox with 2″ x 6″ boards placed along the ground enclosing the four upright posts. The plans for the tree house did not provide for a sandbox or any other structure immediately underneath. At the time the sandbox was added, a hasp latch with padlock was installed on the trapdoor of the tree house.

On the afternoon of April 18, 1967, plaintiff—then age 3—entered defendants' backyard with his brother James Carroll, Jr.—then age 5—and proceeded to the sandbox. James climbed up the ladder and entered the tree house through the unlocked trapdoor. About 10 minutes later he dropped a rectangular metal milk-box cover down through the trapdoor which struck plaintiff in the right eye. The injury resulted in the removal of the eye.

At trial, Darlene McGrath was called by plaintiff as an adverse witness and testified that she knew neighborhood children, including plaintiff, played in the sandbox; that only occasionally did she supervise this play; and that although children brought toys into the sandbox, to her knowledge the toys were never taken into the tree house. She stated that following the accident she learned that her son Steven had unlocked the trapdoor but she did not know how long it had remained unlocked. In the afternoon of the accident she remained in the house while her son Kevin played in the backyard with some neighborhood children. She stated that after the accident plaintiff's brother told her he had taken McGrath's milk-box cover out of their garage and into the tree house and had dropped it out of the trapdoor.

Defendant Max McGrath was also called as an adverse witness and testified that he, too, knew that neighborhood children, including plaintiff, played in their sandbox; that he was sure toys were brought into the sandbox on occasion, and that at times when the tree house was not in use he had observed toys and other play materials on the tree house floor.

James Carroll, Jr., testified that he had climbed up into the tree house, found the McGrath's milk-box cover lying on the floor and decided to drop it out of the trapdoor. He stated that plaintiff was in the sandbox attempting to climb up the ladder when he told him to move out of the way, and that plaintiff did in fact move to the right. James then dropped the cover which struck plaintiff in the right eye. He stated that to his recollection, he and plaintiff were alone in defendants' backyard at the time.

Plaintiff testified that after entering defendants' backyard his brother climbed up into the tree house but did not take anything with him. Plaintiff remained in the sandbox for about 10 minutes until his brother told him to move out of the way. He stated that at this point he was standing in the sandbox looking up; that although he did not move as requested by his brother, the cover which was dropped hit him in the right eye. He further stated that there were about 10 other children in the backyard at the time, some in the sandbox and some in the tree house with his brother.

Plaintiff called Robert J. Smith and Allan Casper to testify as expert witnesses concerning the modification of the tree house design to include the sandbox. Defendants objected that such testimony would infringe upon the ultimate issue, and the trial court refused to allow the witnesses to testify. Plaintiff made offers of proof that Robert J. Smith, President of Craft Pattern Company, which drafted the plans used by defendant Max McGrath, would have testified that in 25 years of experience he has

never known of a design which included the installation of a sandbox immediately underneath; that he would have further testified that in his opinion such placement of the sandbox would create a dangerous and hazardous condition. According to plaintiff, Allan Casper—a park and recreation manager of several years' experience and wide reputation and the author of several articles on park and recreation management— would have testified that he personally supervised and constructed tree houses of the same design and that in all of his experience such structures are always left open and clear underneath to avoid attracting people to the area below, and that in his opinion, placing a sandbox immediately underneath such tree house would create a dangerous and hazardous condition to any one playing in the sandbox. Defendants rested without producing any further evidence, and their motion for directed verdict was thereupon granted.

■■ Plaintiff's primary contention is that the trial court erred in directing a verdict for the defendants. A directed verdict can be entered only when all the evidence viewed in its aspect most favorable to the opponent so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill.2d 494, 229 N.E.2d 504.) It is upon this standard that we review the propriety of the entry of the directed verdict in this case.

■■ Plaintiff seeks to recover damages for the injury he sustained while upon defendants' property, under a theory of liability first established in *Kahn v. James Burton Co.* (1955), 5 Ill.2d 614, 126 N.E. 2d 836. The Illinois Supreme Court there stated that as a general rule a child trespasser enjoys no greater status on the property of another than adults and is owed no higher duty of care by the owner or occupier thereof. The court recognized, however, that an exception exists where (1) the owner or person in possession knows or should know that young people habitually frequent the vicinity of (2) a defective structure or dangerous agency existing on the land (3) which is likely to cause injury to them because they, by reason of their immaturity, are incapable of appreciating the risk involved, and (4) where the expense or inconvenience of remedying the condition is slight compared to the risk to the children. The existence of these four elements gives rise to a duty upon the owner or occupier of land to exercise due care to remedy the condition or otherwise protect the children from injury resulting from it. Nonetheless, under the *Kahn* standard, an owner or occupier of property does not thereby become an insurer of the safety of trespassing children. Liability can be predicated only upon some fault, and fault does not arise unless the injury is the natural and prob-

able result of a negligent act or condition and is of such character that an ordinary prudent person ought to have foreseen as likely to occur as a result of that negligence. (*Driscoll v. C. Rasmussen Corp.* (1966), 35 Ill.2d 74, 219 N.E.2d 483.) Plaintiff argues that sufficient evidence was adduced to create questions of fact for the jury as to each element of the *Kahn* standard and that, therefore, the trial court erred in directing a verdict for defendants.

■■ The record contains ample evidence that defendants were aware that young children frequented the vicinity of the tree house and sandbox; that plaintiff, due to his age, was incapable of appreciating the risk of harm therefrom, and that the expense or inconvenience of remedying the condition was slight compared to the risk of injury to children. Defendants each testified that they knew young neighborhood children played in the backyard and specifically in their sandbox. At the time of the injury plaintiff was 3 years of age, a stage of intellectual development and sophistication barely removed from infancy. The construction of the sandbox by nailing four pieces of wood to the corner posts of the tree house at ground level and filling the interior with sand indicates in itself the absence of expenses or inconvenience to remove or relocate it elsewhere. As to these three elements of plaintiff's cause of action, the evidence created questions of fact for the jury, and a directed verdict did not lie.

■■ Plaintiff does not contend that defendants' tree house and sandbox were in themselves either defective or dangerous; instead, plaintiff's complaint alleges that the placement of the sandbox immediately below the trapdoor in the floor of the tree house constituted the requisite dangerous agency. A dangerous agency can result from a common instrumentality or instrumentalities which in themselves are not dangerous if the instrumentality or combination thereof in relation to the surroundings creates a hazardous condition which is likely to cause injury to young children. (*Trobiani v. Racienda* (1968), 95 Ill.App.2d 228, 238 N.E.2d 177; *Smith v. Springman Lumber Co.* (1963), 41 Ill.App.2d 403, 191 N.E.2d 256.) In *Smith*, defendant appealed from a judgment entered upon a verdict for plaintiff, contending that there was no evidence that a dangerous agency existed on his property. There, an unused but nondefective fuel oil tank was placed in such proximity to a tree that children living in the apartment building of defendant played around and upon the tank and into the adjoining tree, which defendant knew. In affirming the judgment the court stated that the proper yardstick with which to measure the case against the *Kahn* standard was whether or not the tank and tree together created a dangerous agency likely to

cause injury to children, and held that the evidence presented a question of fact for the jury.

■■ In the instant case, evidence was introduced that defendants' tree house was modified to include the sandbox placed under the trapdoor and that the plans used did not provide for such installation. The fact that young children amusing themselves in defendants' backyard would be drawn to the sandbox is obvious. If a child was injured while playing in the sandbox by the operation of a natural, probable and foreseeable consequence of its placement below the trapdoor of the tree house, a question of fact would arise as to whether the configuration of these two structures constituted a dangerous condition or agency. We believe that sufficient evidence was introduced which would have prohibited the entry of a directed verdict on this particular element of the plaintiff's cause of action.

■■ The final element in plaintiff's cause of action which must be considered is that of proximate cause. Initially, it must be determined if a question of fact arises under the evidence as to whether the injury sustained by plaintiff was the natural and probable result of the maintenance of a dangerous agency on defendants' property. In arguing that the injury was foreseeable plaintiff asserts the following: (a) that the proclivity of small boys to throw or drop objects which no longer hold their interest is a matter of common knowledge; (b) that both defendants testified they were aware that children brought toys into the sandbox; (c) that according to the testimony of defendant Max McGrath, on at least one occasion, play materials were also found on the tree house floor; and (d) that defendant Max McGrath indicated that he anticipated some dangers arising from the tree house by his installation of a hasp latch with padlock on the trapdoor. Defendants respond that whatever causal connection may have existed between their alleged negligence in placing the sandbox underneath the tree house trapdoor and the injury was broken by the unforeseen, new and independent intervening act of plaintiff's brother in dropping the milk-box cover which struck the plaintiff. The issue, therefore, is whether defendants should have reasonably foreseen that the alignment of the sandbox and the trapdoor of the tree house would likely result in a child, standing therein, being injured by an object carelessly but intentionally dropped from above. We think not.

■■■ The direct and immediate cause of plaintiff's injury was the careless manner in which his brother dropped the milk-box cover down through the trapdoor of the tree house. Contrary to plaintiff's assertion, it matters not that James Carroll did not drop the cover with the specific

intention of hitting the plaintiff, nor that James was legally incapable of negligently doing such an act. Regardless of its own individual legal character, the act of plaintiff's brother was an independent act and constituted an efficient intervening force which brought about the injury involved. In *Driscoll v. Rasmussen Corp., supra,* the court held that a defendant could not have reasonably foreseen that in the act of maintaining a trash pile with partially filled cans of paint, a child would spill some of the paint on his clothing and later be injured when coming into contact with fire from an unknown source. There, the proximate cause of the injury was held to be the fire with which plaintiff come into contact and not the defendant's maintenance of the trash pile with cans of paint in it. Similarly, in *Donehue v. Duvall* (1968), 41 Ill.2d 377, 243 N.E.2d 222, the court stated that the propensity of small boys to throw things at each other is a matter of common knowledge, but held that if the objects left accessible to them are not inherently dangerous, the resulting harm is not reasonably foreseeable. There, the defendant had maintained a dirt pile on his property without knowledge that glass was embedded in some of the dirt clods. The plaintiff was injured as a result of being hit with a glass-embedded clod thrown by a playmate. The court held that the proximate cause of the injury was the dirt clod being thrown at plaintiff, an act with which defendant had nothing to do. In the instant case, as in *Driscoll* and *Donehue,* the defendants' maintenance of the alleged dangerous agency could at most be only a remote cause of plaintiff's injury because from its maintenance the defendants could not have reasonably foreseen the independent force which intervened to bring about that injury.

■■ ■ *Stewart v. DuPlessis* (1963), 42 Ill.App.2d 192, 191 N.E.2d 622, cited by plaintiff in support of the argument that his injury was foreseeable by defendants, is distinguishable. In that case, plaintiff was struck in the face with a lime "snowball" which one of his playmates had made from a pool of slaking lime at defendant's construction site. The object left accessible was inherently dangerous and the harm resulting from its being thrown was foreseeable under the holding in *Donehue.* Moreover, in the instant case, the plaintiff does not assert that the milk-box cover was inherently dangerous or that any liability should be predicated on its being left accessible to plaintiff's brother. Instead, he alleges that the natural and proximate cause of the accident was the alignment of the tree house trapdoor and the sandbox. The cause of plaintiff's injury was not the alignment of the structure, but rather was the act of his brother. If any harm could have been anticipated or foreseen, it did not include the deliberate dropping of the cover. We conclude that the evidence shows as a matter of law that the act of plain-

tiff's brother in dropping the milk-box cover was unforeseeable and was the proximate cause of the injury sustained. Therefore, the trial court did not err in granting defendants' motion for a directed verdict.

In view of the foregoing it is not necessary to consider the further contention of plaintiff that the trial court erred in refusing to allow the testimony of his two expert witnesses. The offers of proof indicated that the testimony of those witnesses would have concerned only the issue of whether the placement of a sandbox under the trapdoor of the tree house constituted a dangerous agency. Such testimony was not directed to, and could not aid in, establishing that agency as the proximate cause of plaintiff's injury.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McNAMARA, P. J., and McGLOON, J., concur.