FERNANDO HINOJOSA, a Minor by his Mother and Next Friend, Elsie Hinojosa, Plaintiff-Appellee, v. THE CITY OF CHICAGO HEIGHTS, Defendant-Appellant.

First District (1st Division)  No. 86—1544

Opinion filed February 1, 1988.

James K. Horstman, Barry L. Kroll, Richard W. Schumacher, and C. Barry Montgomery, all of Williams & Montgomery, Ltd., of Chicago, for appellant.

Philip H. Corboy, Thomas A. Demetrio, Todd A. Smith, and David A. Novoselsky, all of Corboy & Demetrio, P.C., of Chicago, for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

This is an appeal from a jury verdict in favor of plaintiff, Fernando Hinojosa, in the amount of $340,113.67 for personal injuries incurred on residential property owned by the City of Chicago Heights (the city). Defendant city raises the following issues on appeal: (1) whether plaintiff failed to plead or prove a cause of action for negligence; (2) whether the plaintiff failed to establish that any act or omission of the defendant was a proximate cause of the injury; (3) whether plaintiff can recover under a cause of action for nuisance; and (4) whether the trial court erred in permitting the jury to consider evidence regarding the condition of the accident site. We reverse.

The original complaint alleged that the city had negligently permitted the minor plaintiff to enter upon the defendant's property where he was injured when another child, Guillermina Del Horno, rubbed a caustic substance into plaintiff's eyes. Plaintiff subsequently added a second count, alleging that the condition on the premises violated the city's municipal code, thus constituting a nuisance. Defendant filed motions for summary judgment and to dismiss count II of the amended complaint, both of which were denied.

At trial, Guillermina Del Horno testified that she was six years old at the time of the incident and that she and plaintiff had entered the basement of the building at 198 East 22nd Street (the 198 East house) to play. She stated that she had not been in the house before that day and did not know if other children had ever played there before. When she and plaintiff went into the house, the door was open

and they were able to walk right in. She testified that the basement was not clean and that there were some cans on the floor. She found a can which she though contained soap, emptied some of the contents into her hand, and put it into plaintiff's eyes. She testified that plaintiff's exhibit 65, a can of Easy Off oven cleaner, looked like the can she had found in the basement.

Ruben Del Horno, Guillermina's four-year-old brother, corroborated his sister's testimony regarding the condition of the house. He also identified plaintiff's exhibit 65 as being similar to the can involved in the incident.

An ophthalmologist Dr. Lawrence Chapman, testified that he saw and treated plaintiff on the day of the incident. He stated that upon examining plaintiff, he observed severe burns on plaintiff's right eye and moderately severe burns on plaintiff's left eye. He testified that the burns were consistent with an injury caused by lye and that Easy Off contains sodium hydroxide, which is lye.

Roberto Sanchez, who lived two buildings away from the 198 East house, identified a photograph of the house in question as it looked on April 6, 1981, the date of the incident. He stated that he had gone into the house after his wife told him about plaintiff's injury. The photographs showed that trash was piled in the garage and first-floor apartment of the building and that the windows in the front of the house had been broken out. Mr. Sanchez also stated that the city had posted a notice on the door of the house.

On cross-examination, Mr. Sanchez admitted that he did not know when the photographs had been taken or whether the condition of the premises had changed between the time he went into the apartment and the time the photographs were taken. He did not go into the basement and did not see what was there. He did not see any substances resembling Easy Off and he had never seen children in the building.

Deborah Medina, who lived across the alley from the 198 East house, testified that she had called the city four or five times about the condition of the garage and had reported that children were playing in the garage prior to plaintiff's injury. Her complaints related solely to the garage, and stated that she could not see the residential building at 198 East 22nd Street.

Joseph Ignelzi, a housing code enforcement officer employed by the city, testified that the city purchased the 198 East house approximately nine months prior to plaintiff's injury. He stated that although city records on the premises did not show any visits made by city personnel to inspect the premises prior to the date of the incident, his

department had been out to the property in March 1981 to post a notice requiring the tenant to vacate the building. The department had boarded up the second-floor apartment on January 21, 1981.

The notice posted by the department stated that the building was not fit for human habitation; however, Mr. Ignelzi testified that the city had never made a determination that the property violated any code provisions. He stated that the notice was used to compel the tenants to move out of the city-owned building because the city intended to demolish the building. Ignelzi's department first received notice that the building had been vacated on April 14, 1981, and the building was boarded up on the same day.

John Hogensen, a housing inspector employed by the city, testified that he posted the notice at the 198 East house on March 23, 1981. He stated that the reason a house is posted with a sign "not fit for human habitation" is to inform persons that the City of Chicago Heights has determined that no one should occupy such a building.

Mr. Hogensen also testified that if he inspected a house and found a violation, he would reinspect the house to see that the violations had been corrected. According to the city's records on the 198 East house, violations were found on November 7, 1979, and a reinspection was scheduled for December 14, 1979, but no reinspection had ever been made.

At the time Hogensen posted the notice, a woman came to the door and he asked her to inform the city when she moved out. Hogensen further testified that the photograph purporting to depict the front of the building did not accurately portray the condition of the structure on the day he posted the notice, as on that day all of the doors and windows were intact.

Defendant's motion for a directed verdict at the end of plaintiff's case in chief was denied.

Barbara Mack testified on behalf of defendant that she had lived at 198 East 22nd Street in 1980 and 1981. She stated that she moved out of the first-floor apartment on April 4, 1981, and moved directly to the Timber Line Apartments in Steger. When she moved out there were no bottles or other containers in the basement, there was no trash on the first floor and there were no broken doors or windows in the house. Ms. Mack had never seen children in the basement of the residence.

Defendant's motion for directed verdict at the close of all the evidence was denied. The jury returned a general verdict in favor of plaintiff in the amount of $340,113.67. Defendant now appeals.

■ Defendant's primary contention is that plaintiff failed to plead

a cause of action for negligence based on *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E.2d 836. Under *Kahn,* an owner of land may be held liable for injuries to a child incurred on its premises only: (1) if the landowner knows or should know that children frequent the premises; and (2) the child is injured by a dangerous condition existing on the land. If both of these requirements are met, "it is deemed that harm to children is sufficiently foreseeable for the law to impel an owner or occupier of land to remedy the condition." (*Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 326, 383 N.E.2d 177, citing *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E.2d 836; see also Restatement (Second) of Torts §339 (1965).) *Kahn* rejected the "attractive nuisance" doctrine and established that liability for trespassing children was to be determined based on ordinary rules of negligence. *Kahn,* 5 Ill. 2d at 624.

■ With respect to the first prong of the *Kahn* test, defendant disputes the jury's apparent finding that the city had prior notice that children frequented the premises. As the city has failed to present any argument on this issue, however, it is waived for purposes of this appeal. *Piper v. Moran's Enterprises* (1984), 121 Ill. App. 3d 644, 649, 459 N.E.2d 1382.

■ The determinative issue then, is whether the second prerequisite of *Kahn,* that the cause of plaintiff's injury resulted from a dangerous condition on the land, was established here. We believe it was not. The evidence in this case, even when considered in its aspects most favorable to the plaintiff, showed only that his injury resulted from the actions of Guillermina Del Horno, who may have found the can of caustic material on defendant's property and who opened the can and rubbed the substance into plaintiff's eyes.

Plaintiff relies on *Stewart v. DuPlessis* (1963), 42 Ill. App. 2d 192, 191 N.E.2d 622. In *Stewart,* the minor plaintiff was injured when he was playing in a house under construction and a friend threw a "snowball" made from hydrated lime, a caustic substance which had been left on the premises by defendant's employees. (*Stewart,* 42 Ill. App. 2d at 195-96.) The court found defendant liable on the basis that defendant had failed to secure a caustic substance that was inherently dangerous. (42 Ill. App. 2d at 197-98.) In the present case, unlike *Stewart,* the caustic substance was not exposed but was safely secured in a container. Absent a deliberate effort to empty the can and put the substance to an unintended use, the can of oven cleaner did not present the open danger present in *Stewart.*

The instant case is more analogous to *Teter v. Clemens* (1985), 131 Ill. App. 3d 434, 475 N.E.2d 1063, *aff'd* (1986), 112 Ill. 2d 252, 492

N.E.2d 1340. In *Teter*, the five-year-old plaintiff was struck in the eye by a pellet fired by defendants' five-year-old grandson. The incident occurred while the children were playing in the defendants' home, where they kept the pellet gun. Plaintiff pleaded a theory of negligence based on *Kahn*, alleging that he was too young to appreciate the risk of playing with defendants' grandson under the circumstances. The trial court dismissed the *Kahn* claim for failure to state a cause of action.

The appellate court affirmed, holding that the liability of a landowner to a child under *Kahn* and *Corcoran* is concerned exclusively with a condition of the land and does not apply where the injury is caused by the independent conduct of a third person.

The Illinois Supreme Court adopted the same analysis and reasoning in its affirmance of the dismissal of the *Kahn* claim:

> "The appellate court believed that the cause [of action] asserted here was the duty of the defendants, as possessors of land, to children coming onto their premises but held that the duty would pertain only to a condition of the land. This distinction is, we believe, significant. In this case, the plaintiff did not find the pellet gun and then injure himself; rather, the plaintiff was injured by his playmate, who had found the pellet gun. Thus, the circumstances alleged present more than just a condition existing on the defendants' property; the action is based on an additional element, the third party who found the pellet gun and discharged it." *Teter v. Clemens* (1986), 112 Ill. 2d 252, 259, 492 N.E.2d 1340.

As in *Teter*, we conclude that plaintiff was injured not by a condition on defendant city's land but by the unforeseen actions of a third party, in this case Guillermina Del Horno, who opened the can of oven cleaner and rubbed it into plaintiff's eyes.

Even if we were to accept plaintiff's argument that the city was negligent in failing to secure the building against trespass by children, plaintiff has failed to prove that defendant's negligence was the proximate cause of his injury. Under *Kahn*, an injury to a trespassing child is not actionable unless it could have been foreseen or reasonably anticipated as a consequence of the condition on the land. (*Donehue v. Duvall* (1968), 41 Ill. 2d 377, 380, 243 N.E.2d 222; *Colon v. Marzec* (1969), 115 Ill. App. 2d 410, 413-14, 253 N.E.2d 669.) To establish reasonable foreseeability in such a case, the plaintiff must show more than that the defendant could have foreseen that the event was conceivable or merely possible; rather, he must show that the event was "objectively reasonable to expect." (*Anderson v.*

*Woodlawn Shell, Inc.* (1985), 132 Ill. App. 3d 580, 583, 478 N.E.2d 10, *appeal denied* (1985), 108 Ill. 2d 555, quoting *Winnett v. Winnett* (1974), 57 Ill. 2d 7, 13, 310 N.E.2d 1.) On the record here, we believe there is no basis for finding that any act or omission on the part of the city constituted a legal cause of plaintiff's injuries. See also *Cole v. Housing Authority* (1979), 68 Ill. App. 3d 66, 385 N.E.2d 382, *appeal denied* (1979), 75 Ill. 2d 589 (defendant housing authority not liable for injury where metal stake left on defendant's property thrown by third party caused injury); *Sahara v. Ragnar Benson, Inc.* (1977), 52 Ill. App. 3d 119, 367 N.E.2d 233 (defendant contractor not liable for injuries caused by child throwing rock on construction site); *Carroll v. McGrath* (1974), 25 Ill. App. 3d 436, 323 N.E.2d 513, *appeal denied* (1975), 58 Ill. 2d 596 (intervening act of third party severed causal chain leading from dangerous condition to plaintiff's injuries).

■ In count II of the amended complaint, plaintiff alleged that defendant's failure to board up the 198 East house and failure to keep the premises free of debris and garbage constituted a nuisance as defined in the Municipal Code of the City of Chicago Heights. The city contends that the judgment as to count II should be reversed as there is no private right of action provided by the ordinances and that even if such a cause of action existed, plaintiff failed to plead or prove that he was a member of the class intended to be protected by the ordinance.

When no special right of action is provided, a violation of an ordinance is relevant only as evidence on the issue of due care. (See generally W. Prosser & W. Keeton, Torts §36 (5th ed. 1984).) A statute or ordinance cannot enlarge the duties owed by the city to the plaintiff beyond those existing at common law. (*Washington v. Atlantic Richfield Co.* (1976), 66 Ill. 2d 103, 108-09, 361 N.E.2d 282.) Nor does a statutory violation obviate the need to establish that the defendant's conduct was the proximate cause of plaintiff's injury. *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 390, 356 N.E.2d 93.

Section 11—22(e)(e) of the Municipal Code of Chicago Heights[1] in force at the time the complaint was filed, provided:

> "Any dangerous or abandoned building or structure, as defined by this section, within the City is hereby declared to be a nuisance."

Section 11—23 provided:

> "It shall be unlawful to maintain or permit the existence of any

---

[1]Sections 11—22(e)(e) and 11—23 were amended by ordinance No. Mis—84—15, §1, 10—15—84.

dangerous or abandoned building or structure in the City, and it shall be unlawful for the owner, owner's agent, occupant, or person in custody of any dangerous building or structure to permit the same to remain in a dangerous condition, or to occupy a building or permit it to be occupied while it is, or remains in a dangerous condition."

Section 21—74 states:

"It shall be unlawful for any person to maintain or permit the existence of any nuisance on any property within the City." Chicago Heights, Ill., Municipal Code, §§11—22(e)(e), 11—23, 21—74 (1954).

The language of the ordinances in issue does not authorize a private cause of action for damages for violation of the ordinances. Rather the ordinances provide that abandoned or dangerous buildings are a nuisance and that it is unlawful to occupy them or to permit them to be occupied. On their face, the purpose of the ordinances appears to be limited to insuring the safety of tenants and protecting the property rights of neighbors. These ordinances are intended to benefit the municipality at large and cannot be interpreted as intended to protect plaintiff here from the injury he suffered. See *Nichols v. Sitko* (1987), 157 Ill. App. 3d 950, 954, 510 N.E.2d 971; *Barthel v. Illinois Central Gulf R.R. Co.* (1978), 74 Ill. 2d 213, 219-20, 384 N.E.2d 323.

■ Even assuming that the city violated its own ordinance by failing to board up the 198 East house and by permitting debris to accumulate on the property, plaintiff was still required to prove that such a violation was the cause in fact of plaintiff's injury. (*Sheehan v. Janesville Auto Transport* (1981), 102 Ill. App. 3d 507, 512-13, 430 N.E.2d 131.) Cause in fact can be established only where there is a reasonable certainty that plaintiff's injury was caused by the conduct of defendant. *Morton v. F. B. D. Enterprises* (1986), 141 Ill. App. 3d 553, 559-60, 490 N.E.2d 995, *appeal denied* (1986), 112 Ill. 2d 578.

In this case, the plaintiff acknowledged that the injury occurred as a result of Guillermina Del Horno's actions in opening a container of oven cleaner and rubbing the substance into his eyes. Any acts or omissions of the defendant city were not material factors in the injury that was caused to plaintiff here. As a result, we do not believe that plaintiff can rely upon the Chicago Heights nuisance ordinances to impose liability upon the city.

As we have concluded that the judgment should be reversed, we need not consider defendant's contentions that the trial court erred in admitting certain photographs of the premises into evidence.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Judgment reversed.

BUCKLEY and QUINLAN, JJ., concur.