CYNTHIA LEONE, Plaintiff-Appellee, v. THE CITY OF CHICAGO, Defendant-Appellant.

First District (5th Division)   No. 1—91—0264

Opinion filed September 4, 1992.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Brian Trubitt, Assistant Corporation Counsel, of counsel), for appellant.

Joseph R. Curcio, Ltd., of Chicago, for appellee.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

Defendant City of Chicago (City) appeals the decision of the trial court holding it liable to plaintiff for a police officer's ordinary negligence in enforcing traffic laws. Because we find, as did the trial court, that while the officer was performing an ordinary traffic stop, he assumed and breached a special duty of care to plaintiff, we affirm his (and the City's) liability for negligence.

On October 19, 1983, Chicago police officer William M. Coffey stopped plaintiff Cynthia Leone in the 500 block of east 31st Street for driving with an expired license plate. In effectuating the traffic stop, Officer Coffey halted plaintiff's vehicle in the active traffic lane of a two-lane street, parked his police car two to three feet from plaintiff's rear bumper, and informed an unbelieving Cynthia Leone of the violation. When Leone questioned the fact that her license plate had expired, Officer Coffey told her, "If you don't believe me, then get out and look." Leone, preceded by the officer, walked between her car and the police car to examine the license plate. At this point, a car driven by Calvin Blakely collided with the

rear of the police car, which was thrown forward, trapping Leone, and causing her severe injuries. A jury trial ensued, and the City of Chicago was found liable (through Officer Coffey's negligence) for Leone's damages.

On appeal, the City alleges that the trial court's ruling is contrary to established law as the applicable statutory authority provides that no municipal employee is to be held liable for acts done in the enforcement of any law unless those acts were wilful and wanton (Ill. Rev. Stat. 1989, ch. 85, par. 2—202), and in the instant action the jury specifically found that Officer Coffey's actions were not wilful and wanton. The City further contends that its liability cannot be predicated on its "special duty" to the plaintiff, as the necessary elements for this common law exception to the general blanket immunity for the failure to provide police protection services have not been met. The City additionally posits that even if a special duty and its breach could be established, the applicable standard of care would be wilful and wanton negligence, and thus, a finding of liablility based on simple negligence is erroneous. Finally, the City argues that even if it breached a special duty to Leone, it did not proximately cause the damages she suffered.

If our analysis of Officer Coffey's actions led to the conclusion that he was solely engaged in law enforcement, then, as the City argues, the applicable standard of care would be mandated by statute (Ill. Rev. Stat. 1989, ch. 85, par. 2—202), and liability would not be imposed absent a finding of wilful and wanton behavior. (See *Fitzpatrick v. City of Chicago* (1986), 112 Ill. 2d 211, 492 N.E.2d 1292 (in which a police officer was found to be enforcing the law when he was involved in investigating a highway accident); see also *Thompson v. City of Chicago* (1985), 108 Ill. 2d 429, 484 N.E.2d 1086 (in which a police officer was found to be enforcing the law when he was attempting to break up an unruly crowd and backed his squad car into the plaintiff).) In both of these cases, the combination of law-enforcing activity and lack of wilful and wanton behavior led to findings of nonliability on the part of the police officer and the city. However, a close inspection of the facts at bar distinguish the instant action from the previously cited authorities and support the trial judge's determination that because of the conversation and sequence of events following the routine traffic stop, Officer Coffey was not merely "enforcing the law" but had assumed a special duty to Leone, entitling her to a higher standard of care.

■ Although the Local Governmental and Governmental Employees Tort Immunity Act (hereinafter Tort Immunity Act) (Ill.

Rev. Stat. 1989, ch. 85, par. 4—102) provides that municipalities have no duty to provide police protection to the general public,[1] case law supports the finding of a special duty of protection when the following four requirements are met:

"(1) the municipality must be uniquely aware of the particular danger or risk to which the plaintiff is exposed [citation];

(2) there must be allegations of specific acts or omissions on the part of the municipality [citation];

(3) the specific acts or omissions *** must be either affirmative or wilful in nature [citation]; and

(4) the injury must occur while the plaintiff is under the direct and immediate control of employees or agents of the municipality [citation]." *Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 508, 565 N.E.2d 654, 659, citing *Bell v. Village of Midlothian* (1980), 90 Ill. App. 3d 967, 970, 414 N.E.2d 104, 106.

The following cases have determined municipal liability based on the existence and breach of a special duty to plaintiff: *Anthony v. City of Chicago* (1988), 168 Ill. App. 3d 733, 523 N.E.2d 22; *Brooks v. Lundeen* (1977), 49 Ill. App. 3d 1, 364 N.E.2d 423; and *Gardner v. Village of Chicago Ridge* (1966), 71 Ill. App. 2d 373, 219 N.E.2d 147. In *Anthony*, the trial court declined to recognize a "special duty" exception capable of piercing the statutory immunity shielding fire fighters from liability. On review, the appellate court first determined that the special duty exception applied to fire fighters as well as police, and then found that plaintiff, Mark Anthony, met all four elements of the cause of action. It concluded that the first three elements were met because the defendant firemen were "experienced in combatting blazes and observing the dangerous effects of updrafts in elevator shafts and that they permitted an untrained, unequipped civilian to open the door of a burning elevator." (*Anthony*, 168 Ill. App. 3d at 737, 523 N.E.2d at 25.) Furthermore, the element of direct and immediate control was met when the fire fighters "instructed" and "directed" Anthony to open the elevator door and encouraged Anthony to "aid" defendants in combatting the fire. The police in *Brooks*, like the fire fighters in *Anthony*, had taken affirmative steps to bring plaintiff under their control (by directing him as to where to park his car in relation to the newly

---

[1]The Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, par. 4—102) provides a broad immunity to municipalities for failure to provide police protection.

erected roadblock) and then failing to warn him of the dangers posed by the roadblock and the high-speed vehicle heading towards it. Testimony adduced at trial further indicated defendants' heightened awareness of the unique dangers involved with roadblocks as demonstrated in a roadblock training manual. Likewise, the police in *Gardner* had a special obligation to plaintiff because they had a "unique awareness" of plaintiff's position of peril and had him under their control when they took him to the side of a highway to identify four suspects who had attacked him earlier that evening. Consequently, they were liable in negligence for the beating plaintiff suffered when he was attacked a second time by the improperly restrained suspects.

Like the defendants in *Anthony, Brooks*, and *Gardner*, Officer Coffey had a heightened awareness of the risk of injury posed to Cynthia Leone, when he halted her car in an active traffic lane, parked his police vehicle several feet behind her rear bumper and directed her to step between the cars in order to observe the expired license plate. At trial, Officer Coffey agreed that one of the most important things in a routine traffic stop is to find a safe location. He further agreed in his deposition testimony (which was used to impeach him at trial) that you would never stand between two cars which were parked on the road to hold a conversation because of the potential hazards of being struck by another vehicle proceeding in the same direction. Additionally, the police department's own training bulletin provides further awareness of this potential risk by advising officers to keep 8 to 15 feet between cars they stop and their own cars.[2]

Although the City argues that case law supports its contention that Officer Coffey did not have a unique awareness of the dangers at issue, we do not find this to be the case. The City's reliance on *Schaffrath v. Village of Buffalo Grove* (1987), 160 Ill. App. 3d 999, 513 N.E.2d 1026, is misplaced. The *Schaffrath* plaintiff, an injured passenger in a drunk driver's vehicle, argued unsuccessfully that the police breached a special duty to him by not detaining the inebriated driver once they had stopped his car for having a loud muffler. The appellate court's decision, affirming the trial court's grant of a motion to dismiss plaintiff's complaint, focused not on the unique awareness element of the "special duty" cause of action, but

---

[2]In *Brooks*, a police department's guidelines and bulletin were similarly used to imply awareness of a heightened risk of danger.

on the lack of defendant's direct or immediate control. Assuming the plaintiffs have satisfied the first three requirements to establish a special duty, the only allegations in the pleadings dealing with the fourth requirement indicate that the injury occurred in another municipality out of the presence and apparent jurisdiction of Officer Haisley. Therefore there is a failure on the part of plaintiffs to adequately allege facts to establish that they were injured while "under the direct and immediate control of employees or agents of the municipality." Similarly, *Santy v. Bresee* (1984), 129 Ill. App. 3d 658, 473 N.E.2d 69, also cited by defendant as supportive of its argument that Officer Coffey was not uniquely aware of the danger facing plaintiff Leone, does not deal with the issue of unique awareness. Rather, this appellate court decision, which also affirmed a trial court's grant of defendant's motion to dismiss, states that the existence of a duty depends on more than the foreseeability of harm. It goes on to note that a request for police protection from the criminal acts of a third party, even though accompanied by a police promise to provide the same, does not create the special relationship envisioned by the special duty cause of action. In other words, though this decision uses the foreseeability of harm language, it hinges not on this factor, but on the same direct and immediate control element absent in the *Schaffrath* decision.

*Lane v. City of Harvey* (1988), 178 Ill. App. 3d 270, 533 N.E.2d 75 (decided on defendant's motion for summary judgment), and *Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 556 N.E.2d 654 (decided on defendant's motion to dismiss for failure to state a cause of action), do address the issue of "unique awareness" but do not support defendant's argument. In *Lane*, an injured security guard alleged that the defendant city was "uniquely aware" of a particular danger confronting him when he was engaged in directing traffic outside of the Arco Plant in Harvey. The trial court found, and the appellate court agreed, that although the city was aware that the plaintiff may have been doing things that were unsafe, it was not specifically aware of any unique danger to which plaintiff was exposed.[3] Similarly, the *Burdinie* court held that allegations of superior knowledge on the part of an employee swimming instructor (as to the dangers of jumping into the shallow end of a swimming pool) did not create a special duty to the plaintiff.

---

[3]The *Lane* court also determined that plaintiff's allegations did not satisfy the second, third, and fourth requirements of the special duty cause of action.

These facts distinguish *Lane* and *Burdinie* from the case at bar, as Officer Coffey's testimony and his familiarity with the police training manual established that he was well aware of the substantial danger posed to plaintiff by halting her car in an active traffic lane, stopping his police car several feet behind plaintiff's vehicle, and by standing and conversing between the two cars.

Defendant City also contends that even if Officer Coffey was "uniquely aware" of the particular danger which threatened plaintiff Leone, Leone was not under the officer's direct and immediate control and, therefore, the fourth prong of the "special duty" test was not satisfied. The facts of the case as established at trial show that when Leone was pulled over, she asked the officer what she had done wrong. She testified that he responded in a "gruff" manner, "Wait until I get to the window and I'll tell you." At this point, Leone was not technically under arrest, though she believed, and we think rightly so, that she was not free to drive away. While a custodial relationship was not effectuated, Leone's freedom of movement was definitely restricted. Following this initial interchange, Leone expressed disbelief of the fact that her license plate had expired. At this point, the officer replied, "If you don't believe me then get out and look." Leone testified that she thought the officer was giving her an order, and furthermore, that when she did get out of her car, the officer "led" her to the back of her car and in between it and his vehicle. Although defendant argues that Officer Coffey did not "control" plaintiff Leone's actions and that his words did not constitute an order, case law supports an opposite conclusion. In *Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 565 N.E.2d 654, plaintiff unsuccessfully argued that he was under the direct control of a park district swimming instructor. In analyzing this contention, the Illinois Supreme Court compared the authority of a swimming instructor to that of a policeman. "Police and fire departments are paramilitary organizations. The very essence of their duties is to be cloaked in State authority, making refusal to obey an order or suggestion a difficult proposition in the mind of a private citizen. There is a tremendous qualitative difference between following a police officer's command and following a municipal recreational program instructor's command." (*Burdinie*, 139 Ill. 2d at 525, 565 N.E.2d at 667.) Applying this reasoning to the facts at bar, we can only conclude, as did the trial judge, that

plaintiff Leone was under the direct control of Officer Coffey, thus satisfying the final element of the "special duty" cause of action.[4]

Defendant City next asserts that even if the elements of the special duty cause of action are satisfied, the requisite standard of care is wilful and wanton conduct as defined by the Tort Immunity Act. (Ill. Rev. Stat. 1989, ch. 85, par. 2—202.) In support of this argument, the City relies on article XIII, section 4, of the Illinois Constitution (Ill. Const. 1970, art. XIII, §4), which provides that the General Assembly has the power to prescribe tort immunities for municipalities. The City then reasons that the Tort Immunity Act, as enacted by the General Assembly, provides that police officers engaged in the enforcement of law will only be held liable where they are guilty of wilful and wanton misconduct. (Ill. Rev. Stat. 1989, ch. 85, par. 2—202.) What the City neglects to note, however, is the fact that the special duty exception is a common law doctrine, an exception to the blanket immunity provided by section 4—102 of the Tort Immunity Act, recognized by the courts of Illinois both before and after the passage of the relied upon statutory immunities provisions. (See *Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 243 N.E.2d 214; *Gardner v. Village of Chicago Ridge* (1966), 71 Ill. App. 2d 373, 219 N.E.2d 147; see also *Trepachko v. Village of Westhaven* (1989), 184 Ill. App. 3d 241, 540 N.E.2d 342.)[5] Although none of these cases (except *Gardner*) involve a decision on the merits, all contain language implying that a showing of simple

---

[4]Defendant also argues that the trial court employed a subjective rather than objective standard of review and further that it incorrectly applied the *Pedrick* standard (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504) and viewed these facts in a light most favorable to the plaintiff. Even assuming *arguendo* such to be the case, the appellate court may make an independent determination as to a question of law. (See 134 Ill. 2d R. 366(b)(1)(i). See also *Havens v. Miller* (1981), 102 Ill. App. 3d 558, 429 N.E.2d 1292.) Moreover, a trial court's judgment may be affirmed on appeal upon any basis appearing in the record. *Illinois Tool Works, Inc. v. Sierracin Corp.* (1985), 134 Ill. App. 3d 63, 70, 479 N.E.2d 1046, 1051.

[5]No Illinois case law to date has defined the relationship between the common law special duty doctrine and the Tort Immunity Act (see *Burdinie*, 139 Ill. 2d at 529 (Miller, J., specially concurring)), although the relationship between sections 2—102 and 4—102 of the Tort Immunity Act has been reached by several appellate court decisions (see *Luber v. City of Highland* (1986), 151 Ill. App. 3d 758, 502 N.E.2d 1243; *Nieder v. Gacy* (1984), 121 Ill. App. 3d 854, 560 N.E.2d 342; *Jamison v. City of Chicago* (1977), 48 Ill. App. 3d 567, 363 N.E.2d 87). However, applicable case law does imply that a special duty analysis may be applied to a police officer who is also enforcing the law. See *Laco v. City of Chicago* (1987), 154 Ill. App. 3d 498, 507 N.E.2d 64.

negligence is sufficient to establish liability under the special duty exception. The *Huey* court states that the "rule [of nonliability] has been maintained in the face of decisions holding municipalities liable for *affirmative negligent or wilful acts* by their employees" (emphasis added) and that "[e]xceptions to the rule have been found only in instances where the municipality was under a special duty to a particular individual, such as protecting a material witness from threatened injury by third parties." *Huey*, 41 Ill. 2d at 363, 243 N.E.2d at 216.

Similarly, the court in *Gardner* notes that the defendant policemen had assumed a "duty to exercise *reasonable care* to protect [plaintiff] against injury from the suspected persons." (Emphasis added.) (*Gardner*, 71 Ill. App. 2d at 380, 219 N.E.2d at 150.) In its *Trepachko* decision, the appellate court affirmed the trial court's dismissal of plaintiff's complaint for failure to "meet the requirements of the 'special duty' exception to the general rule of immunity of municipalities and police officers for acts of *ordinary negligence*." (Emphasis added.) (*Trepachko*, 184 Ill. App. 3d at 244, 540 N.E.2d at 343.) In addition to the above-mentioned case law, the very language of the doctrine at issue provides that the specific acts or omissions of the police may be either *affirmative or wilful*, thus further implying that a showing of simple negligence is sufficient to establish breach of the special duty and the ensuing liability.

The City finally argues that even if it breached a duty to plaintiff, such breach did not proximately cause the injuries at issue. Instead, the City asserts that the wild reckless driving of the third-party motorist who crashed into the parked squad car constituted a superseding cause of Leone's injuries and that the City's conduct at most created a condition that made plaintiff's injuries possible. Established case law provides that proximate cause exists where an injury is the natural and probable result of a negligent act or omission and is of such a character that an ordinarily prudent person ought to have foreseen it as likely to occur as a result of the negligence. (*N.W. v. Amalgamated Trust & Savings Bank* (1990), 196 Ill. App. 3d 1066, 554 N.E.2d 629.) Furthermore, a proximate cause need not be the only, last or nearest cause; it is sufficient if it occurs with some other cause acting at the same time, which in combination with it, causes injury. (*United States Fidelity & Guaranty Co. v. State Farm Mutual Automobile Insurance Co.* (1987), 152 Ill. App. 3d 46, 504 N.E.2d 123.) Therefore, it follows that when there is more than one proximate cause of an injury, one guilty of negligence cannot avoid liability simply because another person was guilty of negligence contributing to the same injury even though the injury would not have occurred

but for the latter's negligence. (*Turner v. Roesner* (1990), 193 Ill. App. 3d 482, 549 N.E.2d 1287.) However, if the alleged negligence of a defendant does nothing more than furnish a condition making an injury possible through the independent negligence of a third party (as in *Hinojosa v. City of Chicago Heights* (1988), 166 Ill. App. 3d 319, 519 N.E.2d 976 (where a defendant's failure to secure his property against entry by trespassers led to plaintiff's injury when a third party rubbed a caustic substance into plaintiff's eyes)), then the two acts are not concurrent and the existence of the condition is not a proximate cause of the injury. *Long v. Friesland* (1988), 178 Ill. App. 3d 42, 532 N.E.2d 914.

■ In the case at bar, the injury to plaintiff Leone was a natural and probable consequence of the officer's negligent parking of his police vehicle and his directing plaintiff to stand between the cars to observe the expired license plate. That the police department and Officer Coffey were aware that such practices were unsafe and could lead to rear-end collisions is evident from both the department bulletin and the deposition testimony. This reasonable foreseeability of injury to plaintiff (even though the actual injury was caused by a third-party motorist's reckless driving) distinguishes the instant action from situations in which a defendant's negligence only furnished the condition making a plaintiff's injury possible. (See *Hinojosa v. City of Chicago Heights* (1988), 166 Ill. App. 3d 319, 519 N.E.2d 976; but see *Long v. Friesland* (1988), 178 Ill. App. 3d 42, 532 N.E.2d 914.) Finally, in reviewing a jury's determination of probable cause, our standard of review is whether the conclusion of the trier of fact is against the manifest weight of the evidence. A verdict is against the manifest weight of the evidence only where the opposite conclusion is clearly evident or the jury's findings are unreasonable, arbitrary and not based on the evidence. (*Topp v. Logan* (1990), 197 Ill. App. 3d 285, 554 N.E.2d 454.) It cannot be said that based on the foregoing standard the jury's determination on the proximate cause issue was unreasonable, arbitrary or not based on the evidence or that the opposite conclusion was clearly evident. We therefore affirm the finding of proximate cause.

For the reasons stated above, the decision of the trial court is affirmed.

Affirmed.

MURRAY and GORDON, JJ., concur.